Yancy Leroy BRITTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 56680.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 27, 1978.

On Rehearing March 21, 1979.

Rehearing En Banc Denied April 11, 1979.

Charles Shavers, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, John W. Booth and Jan Potts, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

PHILLIPS, Judge.

Appellant was convicted of heroin possession.  Article 4476–15, Sec. 4.04(a), V.A.C.S.  Punishment was assessed at life imprisonment.  Article 4476–15, Sec. 4.04(b)(1), V.A.C.S.; V.T.C.A., Penal Code, Sec. 12.42(d).

Appellant was a passenger in a vehicle observed by two Dallas police officers to be blocking the two west-bound lanes of a Dallas street at 1:50 a. m. The car did not move until after the police pulled up and turned their lights on. Appellant was observed as bobbing, weaving, or swaying his head. Upon one officer's inquiry, appellant mumbled incoherent responses. Appellant was further observed to have "glassy" and bloodshot eyes. The officer asked appellant to exit the vehicle at which time the officer arrested appellant for public intoxication. The officer then frisked the appellant, finding a syringe containing fresh, milky white residue in his front coat pocket. Appellant denied being a diabetic to the officer. Upon resuming the pat-down, appellant reached for his pocket. The officer removed appellant's hand and withdrew a matchbox from appellant's pants pocket in which 12 pink capsules, later found to contain heroin, were found.

Appellant and his counsel on appeal contend that the heroin was the fruit of an illegal search and seizure.

The officers were justified in stopping the vehicle in which appellant was a passenger. The officers testified that its position in the road impeded their patrol car and any other west-bound traffic and that such impedance violated a Dallas municipal city ordinance. See also Article 6701d, Secs. 93–94, 153, V.A.C.S.; *Slaughter v. State,* Tex.Cr.App., 439 S.W.2d 836; *Thompson v. State,* Tex.Cr.App., 398 S.W.2d 942. The officer who arrested appellant was legitimately in a position to observe the facts upon which he based his conclusion that probable cause existed to arrest the appellant for public intoxication. Public intoxication is a Class C misdemeanor. Article 14.01(b), V.A.C.C.P., provides that "a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." This Court has held that:

> "Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has

reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime." *Brown v. State,* Tex.Cr.App., 481 S.W.2d 106.

It was footnoted in this case that the facts available to the officer which might constitute probable cause to arrest need not be "sufficient evidence to establish guilt" (481 S.W.2d 106 at 110). One of the essential elements to the offense of public intoxication is intoxication "to the extent that he may endanger himself or another." See *Dickey v. State,* Tex.Cr.App., 552 S.W.2d 467. Citing *Balli v. State,* Tex.Cr.App., 530 S.W.2d 123, and *Bentley v. State,* Tex.Cr. App., 535 S.W.2d 651, the Court in *Dickey* indicated that considerable weight was to be accorded the circumstances in which the individual was found by the police officers in determining whether his state of intoxication was "to the extent that he may endanger himself or another." In *Balli* the defendant was found walking in the middle of a public street while intoxicated. In *Bentley* it appeared the defendant was attempting to purchase tire chains for his automobile, thereby indicating his intended purpose to drive an automobile while intoxicated. In *Dickey* the discovery of the appellant asleep in a car in front of a lounge demonstrated that the appellant was "vulnerable to an assortment of difficulties," including the possibility of driving the vehicle himself.

In the instant case, the arresting officer testified to the following observations made by him.

"Q Did you notice anything unusual about the passenger of the vehicle?

"A Yes, well, while going back to the rear of the vehicle I had a pretty clear view of the passenger as I was sitting there, his head was bobbing and weaving back and forth.

\*　　\*　　\*　　\*　　\*　　\*

"Q Did you have the opportunity to look inside the vehicle?

"A Yes I did.

\*　　\*　　\*　　\*　　\*　　\*

"Q Were you able to observe the defendant's eyes?

"A Yes, sir, I was.

"Q Was anything unusual about that?

"A They appeared to be glassy and bloodshot.

"Q Did you ask the defendant any questions?

"A Yes, I did.

"Q What?

"A First, I asked him how he was doing.

"Q How did he respond to that?

"A He mumbled something that was incoherent—I couldn't understand it.

"Q Did you ask him another question?

"A Yes, I did, and at that time I asked them what they were doing there, or what they were doing, and he still continued to mumble something I couldn't understand.

"Q Did you have—having asked these questions, and gotten these responses, and having observed his eyes and head move in the manner in which you described it, did you have any suspicions about whether or not the man was normal or abnormal, or intoxicated or not?

"A I believe that he was intoxicated.

"Q Of course, this was in a public place?

"A Yes, sir, it was.

"Q Well, did you ask the defendant to step out of the vehicle?

"A Yes, sir, I did."

The police officer then asked the defendant for identification which he was unable to produce for the officer.

"Q Did you next conduct a pat-down frisk of the defendant?

"A Yes, sir, I did.

"Q What was your reason for doing this?

"A It was for my sake, and my partner's safety."

It was at this point that the officer discovered the syringe and heroin within the matchbox within his pocket. The officer testified that after he had felt the bulge of the syringe in the appellant's pocket he thought it might possibly be a knife and that his and his partner's safety might be in danger. The officer further testified that he would not have let the appellant go had he wanted to when he removed him from the vehicle.

On cross-examination, the police officer testified that he did not smell any alcoholic beverage on the appellant's breath. He further testified that he did not file a charge for public intoxication against the appellant. It is clear from the officer's testimony that given the facts observed by him, he lacked the probable cause to arrest appellant for the offense of public intoxication. No facts or information was provided by the police officer to indicate any basis for a reasonable inference that the appellant's suspected intoxication was to a degree that would endanger himself or others. It must be remembered that appellant was a passenger in a vehicle driven by another individual which this testimony shows was not arrested for any offense at that time. There being no probable cause to lawfully arrest appellant without a warrant, the search of appellant's person cannot be justified as a search incident to lawful arrest.[1] Cf. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

However, this finding does not terminate the inquiry required of this Court. As stated above, the initial stop of the vehicle in which appellant was a passenger was justified. However, in determining whether the pat-down frisk of appellant was reasonable and justified, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken [pat-down frisk for weapons] was appropriate?" *Terry v. Ohio,* 392 U.S. 1 at 21–22, 88 S.Ct. 1868 at 1880, 20 L.Ed.2d 889.

---

1. The foregoing answers the question left unanswered in *Wood v. State,* Tex.Cr.App., 515 S.W.2d 300.

"Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry v. Ohio,* 392 U.S. at 24–25, 88 S.Ct. at 1881–82.

\* \* \* \* \* \*

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

\* \* \* \* \* \*

"And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883.

It is abundantly clear from the record before us that the officer's suspicion that appellant was intoxicated was based on the fact of observing the bobbing, weaving, or swaying of his head while within the vehicle and the appellant's mumbled responses to questions from the police officer. The officer also observed that the appellant had glassy and bloodshot eyes. We cannot conclude that these facts provide a reasonable basis for the inference by the police officer that the appellant was armed or posed a present danger to the officer or his partner. The police officer's conclusory statement that the frisk was for the sake of his and his partner's safety fails to satisfy the mandate of *Terry v. Ohio,* supra. The officer provided no facts upon which a reasonably prudent man could conclude that the appellant was armed or posed a danger to the police officers. See *Keah v. State,* Tex.Cr. App., 508 S.W.2d 836; *Wimberly v. State,* Tex.Cr.App., 434 S.W.2d 857; *Tardiff v. State,* Tex.Cr.App., 548 S.W.2d 380; *Crawford v. State,* Tex.Cr.App., 544 S.W.2d 163; *Ablon v. State,* Tex.Cr.App., 537 S.W.2d 267.

In light of the foregoing, we find that the search of appellant which resulted in the discovery of a matchbox containing heroin capsules was not justified under the facts and circumstances established in this record. The search being in violation of the Fourth Amendment to the United States Constitution and Article I, Sec. 9, of the Texas Constitution, the evidence was inadmissible in the trial of the appellant. Appellant's ground of error alleging an illegal search and seizure is hereby sustained.

The judgment is reversed and the cause remanded.

VOLLERS, Judge, dissenting.

It appears that the majority is placing an interpretation upon the offense of public intoxication that is simply not warranted. Section 42.08, V.A.P.C. provides:

"(a) an individual commits an offense if he appears in a public place under the influence of alcohol or any other substance, to the degree that he may endanger himself or another."

It appears that the majority is qualifying this to mean that he must not only be intoxicated to the degree required, but that it be under circumstances wherein he is likely to endanger himself or another. This is simply not provided in the statute. The statute merely requires the intoxication to be to the *degree* that he may endanger himself or another.

The evidence set forth in the majority opinion clearly shows that appellant was very intoxicated and this evidence is certainly sufficient to show probable cause for the officer to arrest him for the offense of public intoxication. Since there was probable cause to arrest for a violation of Section 42.08, V.A.P.C. the officer properly took appellant into custody and the following search of the person was a lawful search incident to a lawful arrest. The contraband which was introduced in evidence in this case was lawfully seized and properly introduced in evidence. This conviction should be affirmed.

I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

TOM G. DAVIS, Judge.

On original submission the panel reversed this case, relying on *Dickey v. State,* 552 S.W.2d 467 (Tex.Cr.App.); *Balli v. State,* 530 S.W.2d 123 (Tex.Cr.App.), and *Bentley v. State,* 535 S.W.2d 651 (Tex.Cr.App.), insofar as these cases related to the essential elements of public intoxication. The panel relied on these cases to determine whether the appellant was shown to have been intoxicated "to the degree that he may endanger himself or another."

█ It must be borne in mind that we are here faced with the question of proof necessary to establish probable cause for arrest rather than proof essential to a judicial determination of guilt. The test of probable cause for an arrest without a warrant as stated by the United States Supreme Court in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 and *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, is:

"Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense."

Thus, when an officer is confronted with a person intoxicated in a public place, his determination as to possible danger that may befall the individual is not reviewed under the same standard used in a judicial determination of guilt.

█ In the instant case, the appellant was first observed at 1:50 a. m. sitting as a passenger in a car blocking both westbound lanes of Ross Avenue in Dallas. The car did not move through a changing of the traffic light while the appellant appeared to be conversing with a young woman standing on the corner. Only when the patrol car turned on its red lights was the car driven to the curb.

The driver got out of the vehicle and talked with the other officer while the arresting officer approached the passenger side of the car. He had observed that the appellant's head was bobbing and weaving back and forth. The officer noticed that appellant's eyes were bloodshot and glassy. The appellant was unable to respond to questions from the officer, only mumbling incoherently.

The appellant stepped out of the car at the officer's request. When asked for identification, the appellant fumbled around, patted his pocket, and finally stated that he had no identification. The officer arrested appellant and a search incident thereto resulted in the officer finding heroin in the appellant's pocket.

The appellant was in a public place and the officer observed sufficient characteristics to support his belief that the appellant was intoxicated. This is not an arrest of an intoxicated person who was merely a passenger in a vehicle under ordinary circumstances, but rather an intoxicated person who was sitting in a car that had blocked two lanes of traffic and failed to move through a change of the traffic lights. Even though appellant was not the driver of the vehicle, the officer could have reasonably concluded that appellant was placed in a position of danger by sitting in a car blocking two lanes of traffic. It is reasonable to assume that had appellant not been intoxicated he would have urged the driver to correct the situation or removed himself from the vehicle. It would appear that the potential for danger to this appellant was as great as that of the defendant in *Balli v. State,* supra, who was walking down the middle of a vacant public street in Plainview after dark. To determine the sufficiency of the evidence to establish the offense of public intoxication, this Court in *Balli, Dickey,* and *Bentley* looked to potential danger rather than present danger to the accused or others.

The officer's observations of the appellant were sufficient to support a conclusion that appellant was intoxicated. This, coupled with his view of appellant's position of

peril as a passenger in a vehicle blocking two lanes of traffic on Ross Avenue in Dallas, was sufficient to warrant a prudent man in believing that appellant was committing an offense. There was probable cause for the officer to arrest appellant. No error is shown in the admission into evidence of the heroin seized in the search of appellant incident to such arrest.

The contentions advanced by appellant in a pro se brief have been reviewed and found to be without merit.

The State's motion for rehearing is granted and the judgment is affirmed.

PHILLIPS, Judge, dissenting.

The majority misconstrues the original panel opinion as having placed an unjustified and stringent standard on the discretion of peace officers to make an arrest. Reliance was had on this Court's opinions in *Dickey v. State,* 552 S.W.2d 467 (Tex.Cr. App.); *Balli v. State,* 530 S.W.2d 123 (Tex. Cr.App.); and *Bentley v. State,* 535 S.W.2d 651 (Tex.Cr.App.), in order to make clear what the *elements* of the offense of public intoxication were. That offense consists of more than mere intoxication in a public place. It requires extreme intoxication *and* public presence under circumstances that indicate a danger to self or others. The question presented in this search and seizure issue was whether the police officer had a reasonable and rational basis for making an arrest for that offense.

The facts showed appellant was a passenger in a vehicle which was stopped improperly on a public street. However, when the officer made his observations and arrested appellant, the vehicle was safely curbed. Further, the driver of the offending vehicle was not arrested, which did not hinder appellant's safe passage to wherever he was journeying. Finally, there was no testimony that appellant appeared in danger or as a threat to the security of others. The majority relies heavily on a new legal duty for passengers to correct a driver's errors or exit.

To be frank, this arrest appears to be a pretext to permit a further exploratory pat-down or search. Once the traffic violation was cured and the decision made to release the driver, the police had no business rousting the passenger.

The liberal construction placed on the probable cause required for an arrest for public intoxication effectively resurrects the former vagrancy statutes which had been ruled unconstitutional. See *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Our citizens who imbibe are now subject to erratic and capricious interference from peace officers, notwithstanding hitherto respected constitutional protections (see Amendment IV, U.S. Constitution; Article I, Section 9, Texas Constitution) and a legislative effort to establish objective standards for law enforcement (see V.T.C.A., Penal Code, Section 42.01).

I adhere to my original opinion and incorporate it by reference herein as further reason to dissent.

CLINTON, Judge, dissenting.

Because the majority opinion creates a situation that permits Fourth Amendment rights of one citizen to be cancelled by offending conduct of another, I must dissent and protest against stripping a citizen of one of the few remaining vestiges of reasonable expectation of personal privacy while riding with another in a motor vehicle.

I take it from what is stated, as well as what is implied, by the majority opinion that a passenger who may very well be intoxicated is nevertheless not intoxicated "to the degree that he may endanger himself or another" so long as the driver operates the motor vehicle in a manner that does not arouse the sensibilities of a peace officer. If that premise is valid, then I simply cannot accept the notion that the degree of intoxication reaches a "zone of endanger" merely on account of misconduct on the part of the driver that, according to the majority, the passenger must undertake to correct or, failing that, alight from the motor vehicle.

The suggested alternatives not only defy common experience shared by nearly every passenger at one time or another but also presume that somehow the arresting officer in this case divined that appellant had come to appreciate the dangerous condition created by his driver—while he was otherwise occupied in conversing with a young woman standing on a corner—and had not taken what the majority sees as exculpatory precautions.

The justification attributed to the searching officer by the majority thus does not pass the settled test of probable cause it insists must be "borne in mind." That is, that facts and circumstances "within the officer's knowledge" must be sufficient to warrant a reasonable belief that appellant had committed or was committing the offense of public intoxication—that he was intoxicated to the degree that he *may* endanger himself or another. In that brief moment while the motor vehicle did not move through a change of lights the officer could hardly have it in his knowledge that appellant understood any danger now perceived by the majority and failed to initiate corrective action. Indeed, the searching officer had no knowledge whatsoever that appellant was even intoxicated until he accosted appellant sitting in the passenger seat of the motor vehicle. Having observed that appellant appeared to have been conversing with the young woman on the corner before he evaluated appellant, the officer had to know that appellant was focusing his attention on the young woman and not on how the driver was maneuvering his vehicle. To provide the searching officer with "knowledge" that "had appellant not been intoxicated he would have urged the driver to correct the situation or remove himself from the vehicle" is but an exercise in hindsight that should not be given retroactive effect.

The consequences of the majority opinion are obvious and far reaching in the jeopardy they presage for Fourth Amendment protections to the mobile citizen.

First, the privacy of the passenger is denied by what is done today on account of misconduct of his driver. Next, because the Court has held that a motor vehicle may be searched for evidence of the cause of intoxication,[1] or for presence of weapons,[2] the privacy of the driver who has done nothing to earn himself so much as a traffic ticket is eroded by what is done today and will be denied by what must surely follow tomorrow.

ONION and ROBERTS, JJ., join in this dissent.

---

1. *Parker v. State,* 576 S.W.2d 613 (Tex.Cr.App. 1979); see generally *Taylor v. State,* 421 S.W.2d 403, 407 (Tex.Cr.App.1967).

2. Compare *Wood v. State,* 515 S.W.2d 300, 306–307 (Tex.Cr.App.1974).