Ramirez v. State 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-317-CR





JOSE CRUZ RAMIREZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 99,793, HONORABLE JON N. WISSER, JUDGE



 





PER CURIAM


 Following a plea of guilty, the trial court found appellant guilty of possessing with
intent to deliver less than 28 grams of heroin. Tex. Health & Safety Code Ann. § 481.112
(Pamph. 1991). Pursuant to a plea bargain agreement, the trial court assessed punishment at
imprisonment for seven years and a $1,000 fine, probated. We will affirm the judgment.

 In his only point of error, appellant challenges the validity of the warrantless arrest
and search during which the contraband was discovered. U.S. Const. amend. IV; Tex. Const.
art. I, § 9. Police officers arrested appellant based on partially-corroborated information provided
by Todd Dennis Jefferies. Appellant argues the officers lacked probable cause to arrest him
because the evidence did not establish the reliability of either Jefferies or his information. 

 Austin Police Officers Richard Colbert and Mike Williams testified at the hearing
on appellant's motion to suppress. Officer Colbert testified that on October 27, 1989, he was at
the police station when another officer brought Jefferies in for possessing a pharmaceutical. 
Jefferies told the officers that his name was "Todd Dennis Paul." To obtain leniency in his own
case, Jefferies offered to arrange a delivery of heroin. Officer Colbert and Jefferies agreed that
if Jefferies could produce a drug dealer who would deliver heroin, the police would not file any
charge on Jefferies. Jefferies identified the dealer as Cruz and provided Cruz' telephone number;
he described the car Cruz drove as an older, black two-door car, a Camaro or a style like a
Camaro. Jefferies additionally stated that Cruz would probably want to meet at a "Mexican" bar
on East 6th Street, where Cruz had met and made deals with Jefferies before.

 Officer Colbert checked the telephone records and found that the number Jefferies
had given was registered to appellant, Cruz Ramirez, at 2308 Canterbury. Police Lieutenant
Barrington then left to find that address. At 2:50 p.m., Jefferies telephoned appellant from
Colbert's office; Colbert recorded the conversation and played it back immediately afterward. 
In their conversation, Jefferies said that he needed "a half," and appellant agreed to meet Jefferies
at Club Mexico in 15 minutes. (1)

 Lt. Barrington, stationed at 2308 Canterbury, observed a black, Pontiac Trans-Am
leave the house at 3:10 p.m. Barrington followed the car, which proceeded directly to the 1500
block of East 6th Street. Colbert, with Jefferies, had parked on 6th Street in front of Club
Mexico, and when the Trans-Am drove past them, Jefferies said, "That's him. That's his car." 
The Trans-Am parked along the street curb, the driver remaining in the car. Colbert radioed a
pre-arranged arrest team, and those officers drove to the Trans-Am, blocked its path, and arrested
appellant. They patted him down for weapons, searched the car, and then searched appellant. 
In appellant's left front pocket, the officers found a packet of heroin.

 After notifying the arrest team, Officer Colbert returned to the police station with
Jefferies. There, he investigated further and learned that the name Jefferies had given him, Todd
Dennis Paul, was false. Todd Dennis Jefferies had a prior arrest record and was then on parole,
with an outstanding arrest warrant from Houston for parole violation.

 A police officer may arrest a person without a warrant only if (a) there is probable
cause with respect to that person, and (b) the arrest falls within one of the exceptions specified
in Tex. Code Crim. Proc. Ann. arts. 14.01-14.04 (1977 and Supp. 1991). Lunde v. State, 736
S.W.2d 665 (Tex. Crim. App. 1987). Article 14.01(b) of the Code provides: "A peace officer
may arrest an offender without a warrant for any offense committed in his presence or within his
view."

 Probable cause for a warrantless arrest exists when at that moment the facts and
circumstances within the officer's knowledge, and of which he had reasonably trustworthy
information, were sufficient to warrant a prudent person in believing that the arrested person was
committing an offense. Beck v. Ohio, 379 U.S. 89, 96 (1964); Britton v. State, 578 S.W.2d 685,
689 (Tex. Crim. App. 1979). The validity of a warrantless arrest under art. 14.01(b) is measured
by the existence of probable cause. Delgado v. State, 718 S.W.2d 718 (Tex. Crim. App. 1986). 
We review the existence of probable cause by the standard of "totality of the circumstances." 
Illinois v. Gates, 462 U.S. 213 (1983); Hennessy v. State, 660 S.W.2d 87 (Tex. Crim. App.
1983). 

 Appellant contends that Jefferies was an unreliable source of information because
he had not given information before, and he was involved in criminal activity, using a false name,
and bargaining for leniency in his own case. Officer Colbert testified that, because Jefferies had
initially been brought into the office on a drug charge, Colbert was suspicious of him. When he
first checked Jefferies' background, using the name and birthdate Jefferies had given him, he
found only one arrest, which was for public intoxication. After appellant's arrest, Colbert
discovered that Jefferies had not told the truth about his name or his arrest record.

 An informant's veracity is relevant in determining the value of his report; it is one
indicia of reliability to be balanced against others in analyzing the totality of the circumstances. 
Illinois v. Gates, 462 U.S. at 230, 234. A low degree of veracity, however, can be compensated
for by some other indicia of reliability. Illinois v. Gates, 462 U.S. at 233; see also, Alabama v.
White, ___ U.S. ___, 110 S. Ct. 2412 (1990). In particular, corroboration of information in a
tip may enhance the credibility of an informant: because an informant is right about some things,
he is more probably right about other facts, usually the critical, unverified facts. Spinelli v.
United States, 393 U.S. 410, 427 (1969) (White, J., concurring); Angulo v. State, 727 S.W.2d
276 (Tex. Crim.App. 1987).

 In this case, Jefferies provided appellant's name and telephone number, a
description of his car, and a place appellant would probably want to deliver heroin. Officer
Colbert verified that the phone number was registered to the name Jefferies had given. The car
appellant drove was black, and Colbert testified that, while not a Camaro, it was quite similar to
a Camaro. Appellant drove this car to the bar in the area Jefferies had predicted. On seeing him,
Jefferies identified both appellant and his car.

 The officers further uncovered facts and observed activities which were consistent
with Jefferies' statement that appellant would deliver heroin. Using the phone number Jefferies
gave him, Officer Colbert found a possible address for appellant. Colbert then allowed Jefferies
to telephone appellant and arrange a heroin delivery from him. Jefferies and appellant agreed to
meet at Club Mexico in 15 minutes; the club fit the description and location Jefferies had initially
given. Twenty minutes after the phone call was made, consistent with the phone conversation,
appellant's car left the address Colbert had identified. The car went directly to the club Jefferies
and appellant had agreed on. The officers' work thus uncovered facts which supplemented
Jefferies' initial information, strengthening the probability that Jefferies truthfully reported that
appellant would deliver heroin. 

 The officers in this case did not personally observe appellant's possession of heroin. 
But under art. 14.01(b), present observations, combined with prior knowledge, can provide
probable cause to believe an offense is being committed in the officers' presence. Stull v. State,
772 S.W.2d 449 (Tex. Crim. App. 1989); Lunde v. State, 736 S.W.2d at 667. That some actions
the officers observed were not themselves incriminating is less important than that apparently
innocent activity became suspicious in light of the tip. Illinois v. Gates, 462 at 243 n. 13; see,
e.g., Draper v. United States, 358 U.S. 307 (1959). Thus, appellant's leaving his house at 3:10
p.m., driving to East 6th Street without making any intermediate stops, and parking in front of
Club Mexico, while innocent in themselves, became significant in the context of the officers' prior
knowledge.

 In addition, the experience and training of law enforcement officers allow them to
make deductions from facts that would be insignificant to an untrained person. United States v.
Cortez, 449 U.S. 411, 419 (1981); Lunde v. State, 736 S.W.2d at 667-668; Miller v. State, No.
3-90-165-CR (Tex. App.--Austin, August 14, 1991, no pet.). Here, Officer Colbert testified that
he had received drug training, that he had worked with street narcotics for about 10 months before
appellant's arrest, and that he had completed undercover heroin purchases himself. It was not
unusual, in Colbert's experience, to learn of a possible delivery in the same manner which
occurred here; he had seen similar situations in his work a dozen times. Officer Colbert testified
that heroin is commonly ordered by a "quarter," "half," or "hundred," to represent one quarter,
half, or whole gram. Jefferies used this common terminology when he placed the order with
appellant, and appellant indicated that he understood what Jefferies wanted without Jefferies'
saying more. The cryptic nature of the conversation reflected the closeness and secrecy of heroin
users and dealers in Austin, a group which Officer Colbert testified was difficult to penetrate. 
Officer Colbert's assessment of the circumstances, based on his knowledge of similar drug deals,
is important to our determination of whether Colbert could reasonably believe that appellant was
committing an offense.

 Based on the officers' corroboration of Jefferies' information, the additional events
they observed, and the experience of Officer Colbert in recognizing drug trafficking, we find that
Colbert had probable cause to believe that, when he was arrested, appellant was possessing heroin
with the intent to deliver it. (2) Because the arrest was valid, the subsequent search incident to the
arrest was also valid. Williams v. State, 726 S.W.2d 99 (Tex. Crim. App. 1986).

 We affirm the trial court's judgment of conviction.


[Before Justices Powers, Jones and B. A. Smith]

Affirmed

Filed: November 20, 1991

[Do Not Publish]

ENDNOTES



1. 1. Officer Colbert testified from his police report to the following conversation between Jefferies
("Paul") and appellant:


 The phone rings, subject on the other end of the line asks, "Hello." Mr.
Paul says, "Yeah, Cruz?" And subject says, "Yeah." Paul says, "Yeah, this is
Todd, man." Cruz responds, "What's happening, man?"

 Paul, "I just thought I would call you up, man. What you up to?" Cruz
responds, "Huh?" Paul states, "What you up to?" Cruz asks, "What do you
need?" Paul replies, "Uh, I need a hundred."

 Cruz responds, "Uh," -- Paul interrupted at that point and said, "a half." 
. . .

 . . . Cruz asks, "Can you -- yeah, okay. Can you come around that in the
same thing." Paul responded or asked him, "Down there at Old Mexico?" Cruz
responded, "Yeah, Club Mexico."

 And because there was a Spanish accent Paul asks again, "Club Mexico?" 
And Cruz responds, "Yeah, club. That's a bar. That's a -- you know." Paul
responds, "Oh, yeah. Right where you was before?"

 And Cruz says, "Uh, so what time are you coming out?" Paul asks,
"About how long will you be there?" Cruz asks, "Oh, me?" Paul states, "I -- I
can get there in ten minutes."

 Cruz asks, "Oh, man, that's about how many?" Paul asks, "Fifteen?" 
Cruz responds, "Oh, yeah. Okay. I'll wait for you at the," fades off. Paul
responds, "All right." Cruz says, "Okay." Paul says, "Uh." Cruz says, "All
right." Paul says, "Bye."
2. Appellant argues that Officer Colbert should have obtained an arrest warrant before Jefferies
telephoned appellant. This argument is untenable because Colbert did not have probable cause
to arrest appellant before the phone call. Probable cause arose later, pursuant to the officers'
investigation and their observation of events, at which point there was no time to get a warrant.