IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-91-295-CR





HANK WILLIAMS SIGSBY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL

DISTRICT


NO. 91-059-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING



 





 After finding appellant guilty of the offense of aggravated robbery, Tex. Penal
Code Ann. § 29.03 (West Supp. 1993), the jury assessed punishment at confinement for twenty-five years. Appellant asserts three points of error, contending that the trial court erred by: 
(1) denying appellant's motion to suppress evidence; (2) refusing appellant's requested jury
instructions and failing to enter findings of fact and conclusions of law regarding the voluntariness
of appellant's confession; and (3) failing to instruct the jury on the law governing parole. We will
overrule appellant's points of error and affirm the judgment of the trial court.

 In his first point of error, appellant asserts that the trial court erred in overruling
his motion to suppress because the seizure of evidence, as well as his confession, were the fruits
of an illegal arrest. Georgetown Police Sergeant Guillermo Martinez, along with other
Georgetown police officers, investigated a reported armed robbery at a Pizza Hut shortly after
1:00 a.m. on December 15, 1990. Pizza Hut employees told the officers that the robber was
wearing a ski mask and "gray sweats"; "It sounded like Hank. It was a squeaky voice and he was
heavy set." The employees were familiar with the suspect since he was a former employee. 
Martinez related that it was his impression that the employees had a "pretty good idea who it [the
robber] was." The manager told Martinez that Hank's wife had already left Texas, and "he
believed that Hank was wanting to go back somewhere, Tennessee or something like that."

 After the manager furnished the officers with appellant's address, the officers went
to the apartment complex where appellant lived. When the officers failed to receive a response
after knocking on the door of appellant's apartment, they returned to the patrol car where they
were able to make telephone contact with the apartment manager. While Martinez was receiving
a description of appellant's car from the apartment manager, appellant was observed driving into
the apartment parking lot. Appellant "backed up into the first parking space." In response to an
officer's question, appellant said that he had been to fill his car with gasoline. Martinez told
appellant that he had observed bank bags sticking out from under the front seat of the driver's side
when he looked through the window of appellant's car. After obtaining appellant's consent, the
officers searched appellant's car and found two bank bags. In response to a question about the
location of his gun, appellant stated, "I don't have a gun in the car, but it's in the apartment." 
Appellant read a consent to search form authorizing a search of his apartment and signed it
without asking any questions. After entering appellant's apartment, appellant directed the officers
to a closet where they found a gun in a box. Pursuant to appellant's directions, the officers
recovered the ski mask and the "gray sweats" from a box that "looked like it had been packed." 
Money was found that generally matched the denominations of bills taken in the robbery. Under
appellant's directions, officers were able to recover what appeared to be "bits and pieces" of
checks in the garbage disposal. Appellant was taken to the station house where he made an
inculpatory statement regarding the robbery. Martinez stated that he did not feel that he had
probable cause to arrest appellant until he saw the bank bags and appellant revealed that the gun
was in his apartment. 

 Appellant urges that there was a lack of probable cause and an absence of exigent
circumstances to justify his warrantless arrest. Probable cause for a warrantless arrest exists at
the moment the facts and circumstances within the officer's knowledge, and of which he has
reasonably trustworthy information, are sufficient to warrant a prudent person in believing that
the arrested person has committed or is committing an offense. Britton v. State, 578 S.W.2d 685,
689 (Tex. Crim. App. 1978). The standard for reviewing the existence of probable cause is the
"totality of the circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 238 (1983). The
"totality of the circumstances" standard applies to warrantless as well as warrant searches. Angulo
v. State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987).

 Circumstances short of probable cause may justify temporary detention for purposes
of investigations. Meeks v. State, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983). Applicable to the
instant cause, the officers must have had articulable facts which created some reasonable suspicion
to connect appellant with unusual activity that was related to crime. See Hoag v. State, 728
S.W.2d 375, 380 (Tex. Crim. App. 1987). In the instant cause, the officers had a reasonable
suspicion that appellant was the robber based upon information given them by the employees of
the Pizza Hut. Armed with this information, the officers' action in confirming appellant's
identity, observing the bank bags sticking out from under the front seat and asking appellant about
the location of the gun were within the bounds of reasonable investigation incident to a temporary
detention. See Meeks, 653 S.W.2d at 12. Given the totality of the facts and circumstances, we
hold that the officers were in possession of sufficient information to warrant a prudent person in
believing that appellant had committed an offense.

 We must next determine whether there were exigent circumstances to justify a
warrantless arrest. The resolution of this issue turns on whether the officers possessed satisfactory
proof that a felony had been committed, that the offender is about to escape, and that there is no
time to procure a warrant. Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977). "The statute
[article 14.04] merely requires a showing that there is satisfactory proof from representations by
a credible person that the felony offender 'is about to escape, so that there is no time to procure
a warrant.' The police officers themselves may observe conduct which indicates that the offender
is about to escape." Crane v. State, 786 S.W.2d 338, 347 (Tex. Crim. App. 1990) (citations
omitted). The Pizza Hut manager had informed the officers that he believed that appellant wanted
to leave town. Having determined that there was probable cause to believe that appellant
committed the robbery, the officers could logically infer that appellant would leave following the
commission of a crime. This inference was reinforced by appellant backing into a parking space
at the apartment and by appellant's statement that he had just been to fill his car with gasoline at
a time approximately one hour after midnight. Martinez estimated that it would have taken two
hours to procure an arrest warrant at the time in question. We hold that appellant's warrantless
arrest was legal, that the search incident thereto was authorized, and that the evidence admitted
incident to the arrest and search was admissible. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the trial court erred in "denying
appellant's requested instructions in accordance with Tex. Code Crim. Proc. Ann. arts. 38.22 and
38.23 (West Supp. 1993), and in failing to enter an order stating its conclusions regarding the
voluntariness of the confession." When the evidence presented to the jury raises a fact issue
regarding the legality of obtaining evidence, the trial court must instruct the jury that if it believes,
or has a reasonable doubt, that the evidence was illegally obtained, it must disregard the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1993). "The defendant need only put
the trial court on notice as to what specific evidence raises such a fact issue and need not submit
a model requested charge." Foster v. State, 767 S.W.2d 909, 912 (Tex. App.--Dallas 1989, pet.
ref'd). No error is shown in the trial court's action in refusing to submit such a charge where no
factual issues were in dispute regarding the arrest of the defendant. Marrs v. State, 647 S.W.2d
286, 289 (Tex. Crim. App. 1983). Appellant did not put the trial court on notice as to what
specific evidence raised any factual issues regarding appellant's arrest. Nor do we find any
disputed factual issue regarding appellant's arrest. Contrary to appellant's additional contention
in this multifarious point of error, the record reflects that the trial court entered an order stating
its findings of fact and conclusions of law regarding the voluntariness of appellant's confession. 
See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 1979). Appellant's second point of error
is overruled.

 In his third point of error, appellant asserts that the trial court erred "in failing to
instruct the jury assessing punishment in accordance with Tex. Code Crim. Proc. Ann. art. 37.07,
§ 4(a) (West Supp. 1993)." (1) If appellant's contention is that the court's charge failed to include
an instruction under article 37.07, § 4(a), appellant failed to voice an objection because of its
omission, nor did appellant request that an instruction be given. Hence, there was no error in its
omission "unless the error appearing from the record was calculated to injure the rights of
defendant, or unless it appears from the record that the defendant has not had a fair and impartial
trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981).

 Appellant directs our attention to a note the jury sent the court during its
deliberation on punishment in which the jury asked: "Can we be told what actual time must be
served of a given sentence, i.e., 20 years, 30 years, 40 years. When would he be eligible for
parole?" The court informed counsel that it proposed to send the following instruction to the jury
in response to its question:



In answer thereto you are instructed as follows: The Court under the law is not
permitted to answer the question which you have presented. Please consider these
instructions along with those already given you and continue your deliberations.



The court denied appellant's request that the jury also be instructed that "they are not to consider
parole one way or another." In his motion for new trial, appellant urged that he was denied a fair
and impartial trial as a result of the conduct of the jury because of the "jury's consideration during
deliberations of the actual time defendant would serve in incarceration before parole as witnessed
by the note to the court." No hearing on the motion for new trial was ever requested or
conducted.

 It is common knowledge that inmates are released on parole. Neither the mention
of parole or the discussion of it by a jury constitutes reversible error "any more than discussion
of any other matter of common knowledge." Beck v. State, 573 S.W.2d 786, 789 (Tex. Crim.
App. 1978). In Smith v. State, 830 S.W.2d 929 (Tex. Crim. App. 1991), cited by appellant, the
court's charge on the effect of parole on time served was based on a then unconstitutional statute. 
The Smith court found the jury's inquiry relative to the effect of parole on time served reflected
that the jury was considering the effect of parole under a constitutionally flawed instruction in the
court's charge. The court stated that the standard for determining harm under these circumstances
was whether a rational reviewing court would be unable to declare beyond a reasonable doubt that
the error made no contribution to punishment. Id. at 929. We reject appellant's contention that
the Smith standard for determining harm should control in the instant cause since we are not
confronted with the issue of a jury considering the effect of parole on time served under an
instruction based on an unconstitutional statute. (2) 

 Appellant has not shown that any member of the jury relied on any misstatement
of the parole law by any other juror in assessing harsher punishment than the juror would have
if it had not been for the misstatement. See Buentello v. State, 826 S.W.2d 610, 616 (Tex. Crim.
App. 1992). Nor has appellant demonstrated by any other means how he was denied a fair and
impartial trial by either the court's failure to grant his requested instruction in response to the
jury's question or the court's failure to include an article 37.07, section 4(a) instruction in its
charge to the jury. Appellant's third point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Jones, Kidd and Davis*]

Affirmed

Filed: June 2, 1993

[Do Not Publish]





* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Article 37.07, § 4(a) provides:


 In the penalty phase of the trial of a felony case in which the
punishment is to be assessed by the jury rather than the court, if the offense
of which the jury has found the defendant guilty is listed in Section
3g(a)(1), Article 42.12, of this code or if the judgment contains an
affirmative finding under Section 3g(a)(2), Article 42.12, of this code,
unless the defendant has been convicted of a capital felony the court shall
charge the jury in writing as follows:


 "Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior,
diligence in carrying out prison work assignments, and attempts at
rehabilitation. If a prisoner engages in misconduct, prison authorities may
also take away all or part of any good conduct time earned by the prisoner.


 "It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.


 "Under the law applicable in this case, if the defendant is sentenced
to a term of imprisonment, he will not become eligible for parole until the
actual time served equals one-fourth of the sentence imposed or 15 years,
whichever is less, without consideration of any good conduct time he may
earn. If the defendant is sentenced to a term of less than six years, he must
serve at least two years before he is eligible for parole. Eligibility for
parole does not guarantee that parole will be granted.


 "It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.


 "You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are
not to consider the manner in which the parole law may be applied to this
particular defendant."
2. The statute in effect at the time the defendant was tried in Smith was held to be
unconstitutional in Rose v. State, 752 S.W.2d 529, 534 (Tex. Crim. App. 1987). Act of May 17,
1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex. Gen. Laws 442 (Tex. Code Crim. Proc. Ann. art.
37.07, § 4(a) (West Supp. 1993), in effect at the time of trial in the instant cause, has been held
constitutional by the Texas Court of Criminal Appeals, see Bruno v. State, 845 S.W.2d 910, 913
(Tex. Crim. App. 1993); Muhammad v. State, 830 S.W.2d 953 (Tex. Crim. App. 1992).