

# NUMBER 13-15-00069-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                        Appellant,

v.

ROGER ANTHONY MARTINEZ,                                                Appellee.

## On appeal from the 24th District Court
## of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Longoria**
**Memorandum Opinion by Justice Garza**

Appellee, Roger Anthony Martinez, was charged by indictment with one count of possession of a controlled substance in a correctional facility, a third-degree felony, *see* TEX. PENAL CODE ANN. § 38.11(d)(1) (West, Westlaw through 2015 R.S.), and one count of possession of less than one gram of cocaine, a state jail felony. *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.115(b) (West, Westlaw through 2015 R.S.). Martinez moved to suppress the drug evidence and the trial court granted the motion. The State now appeals. We affirm.

## I. BACKGROUND

It is undisputed that the evidence Martinez sought to suppress was obtained by police officers via a warrantless search incident to Martinez's arrest for public intoxication. The motion to suppress alleged that the officers lacked probable cause to arrest.

At the suppression hearing, Javier Guerrero stated that he was an officer with the Victoria Police Department on January 5, 2014. On that date, at around 11:40 p.m., he was dispatched to the G&G Lounge, a bar located on South Laurent in Victoria, to investigate a possible fight in the parking lot. Three other officers eventually responded to the call. When Guerrero arrived at the scene, he observed Martinez and his wife, Daniela Jaquez, arguing and screaming at each other in the back parking lot. Guerrero stated he believed that both individuals were intoxicated because they smelled of alcohol, they were having trouble standing, their eyes were glassy, and their speech was slurred. Additionally, Martinez's behavior was "very aggressive." According to Guerrero, Martinez was being uncooperative with police and would not let the officers talk or ask questions. Guerrero stated that "[w]e couldn't talk to him" because "[h]e would just talk over us."

Guerrero stated that fellow officer Patrick Quinn arrested Martinez for public intoxication.[1] *See* TEX. PENAL CODE ANN. § 49.02(a) (West, Westlaw through 2015 R.S.)

---

[1] At the outset of the suppression hearing, the prosecutor informed the trial court that Quinn would not be testifying because he is currently "under indictment in Harris County for charges of bribery and official oppression." The prosecutor explained that, according to Quinn's attorney, Quinn would invoke his Fifth Amendment right against self-incrimination and would not testify in the case. Guerrero testified that he saw no misconduct from Quinn at the time of the arrest.

("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."). Guerrero stated that police administered no field sobriety tests to Martinez, and the encounter was not video-recorded because "the placement of the car was probably not [near] to where the scene was." According to Guerrero, the parking lot in question was in use at the time of the incident. Guerrero explained: "There is a Highway 185 directly in front of the bar. Then you have the local road to the other side of the bar where the parking lot is. So cars freely go in and out."

On cross-examination, Guerrero conceded that, in a report he filed regarding the incident, he did not mention that Martinez showed various signs of intoxication. Guerrero explained that this information was instead contained in the "main officer report," which had been filed by Quinn, as Quinn was the arresting officer. Guerrero also conceded that he did not observe anyone physically fighting. Guerrero agreed that he was "more focused" on Jaquez during the investigation. Defense counsel asked Guerrero: "Isn't it true that [Jaquez] was trying to tell you about her being assaulted?" Guerrero replied: "Yes, but she was being very uncooperative also. . . . She wasn't answering my questions when I was asking her. . . . I asked her what happened, and she said she don't give a [****]." Guerrero later denied that Jaquez told him that she had been assaulted.

Another officer, Timothy Ramirez, was at the scene and testified that he believed Martinez was intoxicated because "[h]e had slurred speech, a swayed stance; his eyes were red and glassy; and I could smell the odor of alcohol emitting from his breath and on his person." According to Ramirez, Martinez was "very aggressive and belligerent" and "would not cooperate with our investigation." Martinez repeatedly complained that it

3

took "[****]ing forever" for police to arrive.

Ramirez explained that the parking lot was "[a]pproximately 15 feet from the roadway, and that was the roadway between that parking lot and the bar and maybe 15 to 20 feet away from South Laurent." He opined that Martinez was not in a suitable condition to drive or to walk home because "[h]e could possibly pose a danger to himself and possibly others that close to an active roadway." Ramirez also stated that Martinez never identified anyone who could come pick him up and never asked to call for a taxi; although he acknowledged on cross-examination that police never asked Martinez whether there was anyone who could pick him up or if he was going to call for a taxi.

Jaquez testified that Martinez's uncle owns the G&G Lounge and that "a lot of his family" was present at the bar on the night in question. She stated that she got into a fight with an unknown female, and that she was punched by the male companion of the unknown female. She testified that she told officers she was looking for her glasses, but the officers "just said that we needed to hurry up and leave there." She stated that she had one beer that night, and Martinez had "[m]aybe around, like, three, four." She did not know that Martinez had cocaine on his person. According to Jaquez, "[t]here was plenty of family" at the bar that night to drive her and her husband home.

The trial court granted the motion to suppress and issued the following findings of fact and conclusions of law:

> On January 15, 2014, officers with the Victoria Police Department responded to a call at the [G]&G lounge . . . around 11:30 p.m. When the officers arrived, a verbal disturbance was occur[r]ing outside of the bar.
>
> There was no video or audio recording made of the contact between the officers and the subjects. Officers made contact with the defendant Roger Martinez and Daniela Vasquez [sic]. According to the testimony of Officer Guerrero, only Officer Quinn made "personal" contact with the defendant Roger Martinez. Officer Guerrero testified that Officer Quinn was the one

4

who "made the call" to arrest the defendant for public intoxication. . . .

Officer Guerrero and Officer Ramirez testified that the defendant demonstrated signs of intoxication; however, neither arrested the defendant for public intoxication. Officer Quinn did not testify because he invoked his right against self-incrimination. No evidence was presented to indicate what Officer Quinn personally viewed or what if any offense was committed within his presence. A peace officer may arrest any offender without warrant for an offense committed in his presence or within his view. [TEX. CODE CRIM. PROC. ANN. art. 14.01 (West, Westlaw through 2015 R.S.)].

The appropriate test for determining whether probable cause exists to make a warrantless arrest for public intoxication is whether, at that moment, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing the arrested person had committed or was committing the offense of public intoxication. *See Banda v. State*, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994); *Britton v. State*, 578 S.W.2d 685, 689 (Tex. Crim. App. 1978); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Guzman v. State*, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).

Probable cause for arrest exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense. *State v. Garrett*, 22 S.W.3d 650, 653–54 (Tex. App.—Austin 2000, no pet.) (citing *Hughes v. State*, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992)). No evidence was presented to demonstrate if Officer Quinn had probable cause to arrest the defendant for public intoxication. In addition, there was no evidence which demonstrated whether the offense of public intoxication was committed within Officer Quinn's presence or view.

As stated above "a peace officer may arrest any offender without warrant for an offense committed in his presence or within his view." [TEX. CODE CRIM. PROC. ANN. art. 14.01]. The statute at issue will be . . . taken and understood in their usual acceptation in common language. [TEX. GOV'T CODE ANN.] §§ 311.002, 311.011 [(West, Westlaw through 2015 R.S.)]. There was no evidence presented to demonstrate what if any information Officer Quinn used to justify the arrest. *See Coleman v. State*, 359 SW 3d 749 (T[e]x. Crim. App. 2011). In *Coleman*, an arrest was found to be valid when a non-arresting officer "participated" in the arrest by relaying his knowledge to fellow officers. *Id.*

The evidence did not show the relay of information between any officer and Officer Quinn at the suppression hearing in this case. Officer Quinn was the only officer who effectuated the arrest of the defendant. There was no evidence of what facts or circumstances Officer Quinn used to justify the

5

arrest. This court will not speculate as to what Officer Quinn's testimony would have been at the suppression hearing.

This appeal followed. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West, Westlaw through 2015 R.S.).

## II. Discussion

The State argues by five issues that the trial court erred in granting the motion to suppress. Specifically, the State contends: (1) the standard of review should be *de novo*; (2) Guerrero and Ramirez were "participants in the arrest" for purposes of article 14.01 of the code of criminal procedure; (3) there was probable cause to support the arrest of Martinez for public intoxication; (4) Martinez's constitutional right to confrontation was not violated by Quinn's failure to testify; and (5) Martinez's compulsory process rights were not violated by Quinn's failure to testify. As each of the issues challenges the propriety of the trial court's suppression ruling, we will consider the issues together.

### A.    Standard of Review

> An appellate court reviews a trial court's pre-trial suppression ruling under a bifurcated standard. Almost total deference is afforded to the trial court's determination of fact. Determinations of fact include "who did what, when, where, how, or why" and "credibility determinations." Because trial judges . . . are uniquely situated to observe first hand the demeanor and appearance of a witness, . . . they are the sole arbiter of questions of fact and of the weight and credibility to give testimony. In that capacity, a trial judge is free to believe or disbelieve any part of the testimony as he sees fit. When a trial judge makes written findings of fact, as he did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. The reviewing court then proceeds to a *de novo* determination of the legal significance of the facts as found by the trial court.

*Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013) (footnotes and citations omitted).

6

**B.    Applicable Law**

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by establishing that a search occurred without a warrant.  *Id.*  Once the defendant has made this showing, the burden of proof shifts to the State to establish that the search was conducted pursuant to a warrant or was reasonable.  *Id.*  Here, it is undisputed that the search was conducted without a warrant.

A warrantless search incident to a lawful arrest is reasonable under the Fourth Amendment.  *See, e.g., Arizona v. Gant*, 556 U.S. 332, 338 (2009).  "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."  TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West, Westlaw through 2015 R.S.).  Probable cause for a such an arrest exists if, at the moment of the arrest, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to allow a prudent person to believe that the person arrested had committed or was committing an offense.  *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).  Probable cause requires "more than a bare suspicion" but less evidence than is required to sustain a conviction.  *Id.*

A person commits the offense of public intoxication, a Class C misdemeanor, "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."  TEX. PENAL CODE ANN. § 49.02(a), (c).  "Public place" means "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools,

7

hospitals, apartment houses, office buildings, transport facilities, and shops." *Id.*

§ 1.07(a)(40) (West, Westlaw through 2015 R.S.); *see York v. State*, 342 S.W.3d 528,

536–37 (Tex. Crim. App. 2011) (holding that the "parking and sidewalk area" outside a

gas station was a "public place"); *Kapuscinski v. State*, 878 S.W.2d 248 (Tex. App.—San

Antonio 1994, writ ref'd) (holding that the evidence was sufficient to show that a nightclub

parking lot, provided for guests of the nightclub and open to the public, was a "public

place").

**C.     Analysis**

The State contends by its first issue that we should review the trial court's decision

*de novo* because "there are no meaningful factual issues in dispute." However, the

parties apparently disagree about the central fact issue involved in this case—i.e.,

whether Quinn observed or was informed that Martinez was committing a crime. *See*

*Amador*, 275 S.W.3d at 878. The parties also disagree as to whether the "viewing

officers"—Guerrero and Ramirez—effectively participated in the arrest such that Quinn's

objective knowledge would be irrevelant. We will, in accordance with applicable law,

defer to the trial court's fact findings and review its legal conclusions *de novo*.

The State cites *Willis v. State*, 669 S.W.2d 728, 730 (Tex. Crim. App. 1984), and

*Astran v. State*, 799 S.W.2d 761, 764 (Tex. Crim. App. 1990), in arguing that the testimony

of officers Guerrero and Ramirez established the legality of Martinez's arrest. In *Willis*,

an undercover officer arranged by telephone to purchase heroin from the appellant. 669

S.W.2d at 730. After the purchase was completed, the undercover officer signaled other

officers, who were waiting about two blocks away, that the appellant retained some drugs

on his person. *Id.* The other officers followed appellant, stopped him, searched him, and

8

arrested him. *Id.* The court of criminal appeals found that the arrest and search were valid—despite the fact that that the arresting officers did not observe the drug sale—because a crime had been committed in the undercover officer's presence. *Id.* The Court noted the undercover officer "had first-hand knowledge of the offense and relayed that knowledge to his fellow officers." *Id.* Moreover, the undercover officer observed the arrest from about three-quarters of a mile away. *Id.* Thus, even though the undercover officer did not personally make the arrest, he "was just as much a participant in the arrest as if he had seized appellant himself." *Id.* Accordingly, the arrest was proper under article 14.01. *Id.*

In *Astran*, which also involved a controlled undercover drug purchase, the appellant similarly argued that his arrest and search were constitutionally invalid "because the [undercover] officer who saw the felony did not actually make the arrest." 799 S.W.2d at 762. Unlike in *Willis*, the undercover officer in *Astran* did not observe the eventual arrest. *Id.* Nevertheless, the Court found that the arrest and search were valid because the undercover officer "saw the felony, was part of a team of officers present at the scene of the offense, and relayed appellant's physical description and geographic location to the arresting officer." *Id.* at 763. Additionally, "[e]ven though [the undercover officer] did not visually observe the arrest, he was parked two blocks away and maintained constant radio communication with [the arresting officer] during the arrest." *Id.* The Court held that that an arrest is proper under article 14.01 "[a]s long as the facts show that the viewing officer effectively participated in the arrest and was fully aware of the circumstances of the arrest." *Id.* at 764.

9

Martinez argues that *Willis* and *Astran* are distinguishable because, here, there was no evidence that the "viewing" officers ever related their information to the arresting officer. We agree that the cases are distinguishable on that basis. In both *Willis* and *Astran*, the viewing officer "participated in the arrest" by relaying his observations to other officers, who then made the arrest based on those observations. *See id.* at 763; *Willis*, 669 S.W.2d at 730. On the other hand, here, neither viewing officer testified at the suppression hearing as to what Quinn, the arresting officer, knew or was able to observe personally. The prosecutor did not ask the testifying officers what Quinn observed or was able to observe. And, the testifying officers did not state that they informed Quinn of what *they* personally observed—i.e., that Martinez was intoxicated to the extent that he endangered himself or others.

The State, citing *Astran*, contends that the arrest was valid because officers Guerrero and Martinez "participated in the arrest" and were "fully aware of the circumstances of the arrest." *See Astran*, 799 S.W.2d at 764. But the trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony. *See Baird*, 398 S.W.3d at 226; *Amador*, 275 S.W.3d at 878. Here, it may or may not have been reasonable to infer from the officers' testimony either that they effectively participated in the arrest or that Quinn personally observed Martinez commit a crime. *See Amador*, 275 S.W.3d at 878 (noting that, "at a suppression hearing, the trial court, like any factfinder, may make reasonable inferences from the evidence presented"). Nevertheless, as is evident from its findings and conclusions, the trial court did not make those inferences.[2] Instead, it found that "only Officer Quinn made 'personal'

---

[2] The State contends that, because the trial court "did not find any improper actions by Officer Ramirez or Officer Guerrero," it "implicitly accepted their testimony about the events concerning [Martinez]'s

10

contact" with Martinez and that "Officer Quinn was the only officer who effectuated the arrest of the defendant." It concluded that the other officers' testimony did not establish "what facts or circumstances Officer Quinn used to justify the arrest." Because these findings are supported by the record, we must uphold them. *See Baird*, 398 S.W.3d at 226.

For the foregoing reasons, we conclude that the trial court did not err in its determination that the State failed to meet its burden to show that the search was reasonable. *See Ford*, 158 S.W.3d at 492. We overrule the State's first three issues and need not reach the remaining two issues. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of October, 2015.

---

arrest as credible." However, the trial court did not make any general credibility determinations in its findings. In any event, even if the trial court accepted the officers' testimony as true, that does not mean the trial court was bound to find that the arrest was valid because, as noted, the officers did not testify as to what the arresting officer observed or was able to observe, nor did they testify that they informed the arresting officer of their observations.

11