**Ronaldo ASTRAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–88–01309–CR.**

Court of Appeals of Texas, Dallas.

Oct. 18, 1989.

Discretionary Review Granted Jan. 17, 1990.

Gary A. Udashen, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before STEWART, LAGARDE and BURNETT, JJ.

**448**

## OPINION

LAGARDE, Justice.

This case deals with the admissibility of evidence obtained through a warrantless arrest under article 14.01 of the Texas Code of Criminal Procedure.[1] Appellant, Ronaldo Astran, appeals his fifteen-year sentence for unlawful delivery of a controlled substance, heroin. In his single point of error, he asserts that the trial court improperly overruled his motion to suppress evidence seized incident to a warrantless arrest. Because the Court concludes that the warrantless arrest was proper, the appellant's point of error is overruled. The judgment of the trial court is affirmed.

The appellant's arrest resulted from a planned, coordinated effort between undercover and uniformed Dallas police officers, which took place August 23, 1988. Officer Warren Wilson was working undercover and was attempting to make street buys of illegal drugs while Officer Anthony Black, in uniform, was waiting one block away in his patrol car. By prearrangement, the undercover vice officers attempted to make buys, and the uniformed officers provided assistance, if needed, and effected arrests after purchases.

Officer Wilson bought twenty dollars' worth of heroin from appellant; immediately thereafter he radioed uniformed Officer Black and gave him a detailed description of appellant, including appellant's height, weight, and location. Officer Wilson specifically noted and described to Officer Black an unusual tee-shirt worn by appellant which spelled the words "Jesus Christ."

Officer Black then proceeded to the location relayed by Officer Wilson and arrested appellant, who Officer Black recognized from Officer Wilson's description. Officer Black testified that he located appellant within two minutes of receiving the description from Officer Wilson. When arrested, appellant was wearing the "Jesus Christ" tee-shirt. Officer Wilson was parked two blocks away during appellant's arrest and maintained radio contact with Officer Black throughout the arrest. Officer Wilson testified that he was not physically present at appellant's arrest because he, Wilson, did not wish to jeopardize his undercover status. During a postarrest search, police found five more heroin capsules on appellant's person. It is undisputed that the uniformed arresting officer did not see the felony heroin sale to Officer Wilson, nor did undercover Officer Wilson visually witness appellant's arrest by the uniformed officer. However, within thirty minutes of appellant's arrest, Officer Wilson identified the appellant through a one-way window at the police station, verifying that appellant had sold the heroin to him.

■ Appellant argues that the trial court erred in overruling his motion to suppress evidence obtained as a result of an allegedly illegal arrest. Article 14.01 of the Texas Code of Criminal Procedure reads:

### Offense within view

(a) A peace officer or any other person may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

This case presents the question of whether article 14.01 justifies a warrantless arrest for a felony when the officer witnessing the felony does not also see the arrest. In Texas, a peace officer's authority to make a warrantless arrest is controlled exclusively by statute. *Fry v. State*, 639 S.W.2d 463, 465 (Tex.Crim.App.1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983). Statutory warrantless arrests stand as exceptions to the general rule that an officer must obtain a warrant prior to an arrest. *Id.* Article 14.01 provides an

---

**1.** All statutes, unless otherwise indicated, are from TEX.CODE CRIM.PROC.ANN. (Vernon 1981).

exception to the rule, but its conditions must be complied with to result in a lawful arrest.

 Certainly a peace officer who does not himself possess probable cause to make a warrantless arrest may act on information relayed to him by other officers to effect a lawful arrest. *Pyles v. State*, 755 S.W.2d 98, 109 (Tex.Crim.App.1988) (en banc). In such cases, the sum of information known to cooperating officers will be examined to determine the sufficiency of probable cause. *Id.* (*citing Woodward v. State*, 668 S.W.2d 337, 344 (Tex.Crim.App. 1982), *cert. denied* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985)). Therefore, a peace officer can effect a proper warrantless arrest using the probable cause information supplied by a fellow officer when an offender is about to escape. Tex.Code Crim.Proc.Ann. art. 14.04 (Vernon 1981).

The record reflects that appellant, who had walked about ten yards away from the location of the drug sale toward an apartment complex when he was approached by the uniformed officer, did not run. The State urges that the record reflects "satisfactory proof.... indicating that the defendant was about to escape," *see Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex.Crim. App.1987), and thus article 14.04 is an independent justification for the arrest here. However, because we uphold the arrest based on article 14.01, we do not decide the validity of the arrest under article 14.04.

A strict reading of article 14.01 seems to mandate that the officer observing the felony, and thereby gaining firsthand knowl-edge of the offense, must also act as the arresting officer. This result is suggested by the "in the presence" language found in both sections of article 14.01. Other courts have declined to follow this strict and narrow interpretation of article 14.01, and we decline to follow it in this case. Both sections of article 14.01 authorize arrests for offenses committed within the officer's presence *or* view.

When a word is not statutorily defined, sound statutory construction principles dictate that the word be given its plain meaning, without regard to distinctions usually made between construction of penal laws and laws on other subjects. *Ramos v. State*, 419 S.W.2d 359, 364 (Tex.Crim.App. 1967). The disjunctive phrase "presence or view" suggests that article 14.01 requires either presence or view and that presence and view signify two separate conditions.[2] The Code of Criminal Procedure provides no special definition of presence or view; therefore, these words should receive their common meaning. Tex.Code Crim.Proc. Ann. art. 3.01 (Vernon 1981); *see Lucario v. State*, 677 S.W.2d 693, 699 (Tex.App.— Houston [1st Dist.] 1984, no pet.). Webster's Collegiate Dictionary defines "view" as the act of seeing or examining. Webster's Ninth New Collegiate Dictionary 1314 (9th ed. 1983). Black's Law Dictionary gives two relevant definitions for "presence," both of which indicate that presence can be achieved without visual observation.[3]

Case law supports the contention that the article 14.01 presence requirement en-

---

2. Black's Law Dictionary defines "or" as a disjunctive particle used to express an alternative or to give a choice of one among two or more things. BLACK'S LAW DICTIONARY 987 (5th ed. 1979).

3. **Presence.** Act, fact, or state of being in a certain place and not elsewhere, or within sight or call, at hand, or in some place that is being thought of. The existence of a person in a particular place at a given time particularly with reference to some act done there and then. Besides actual presence, the law recognizes *constructive* presence, which latter may be predicated of a person who, though not on the very spot, was near enough to be accounted present by the law, or who was actively co-operating with another who was actually present.
**Presence of an officer.** An offense is committed in "presence" or "view" of officer, within rule authorizing arrest without warrant, when officer sees act constituting it, though at distance, or when circumstances within his observation give probable cause for belief that defendant has committed offense, or when he hears disturbance created by offense and proceeds as [sic] once to scene, or if offense is continuing or has not been fully consummated when arrest is made.
BLACK'S LAW DICTIONARY 1065 (5th ed. 1979)(emphasis in original).

compasses more than seeing or viewing. *Taylor v. McDonald,* 346 F.Supp. 390, 394 (N.D.Tex.1972) (finding that presence includes hearing, though not seeing, an automobile); *Johnson v. State,* 481 S.W.2d 864, 866 (Tex.Crim.App.1972) (holding that presence and probable cause were established when the officer smelled marijuana). *See* W. LaFave, Search and Seizure § 5.1(c) (2d ed. 1987). An offense is deemed to have occurred within an officer's presence when any of his senses afford him a knowledge of its occurrence. *Clark v. State,* 117 Tex.Crim. 153, 35 S.W.2d 420, 422 (1931); *Stull v. State,* 726 S.W.2d 258, 260–61 (Tex. App.—Austin 1987, pet. ref'd).

Most discussion of presence has centered on the felony being committed within the officer's presence, but, recently, attention has focused on the officer's presence at the scene of the arrest. The Court of Criminal Appeals addressed the presence at the arrest issue in *Willis v. State,* 669 S.W.2d 728 (Tex.Crim.App.1984) (en banc). In *Willis,* the appellant was convicted of unlawful delivery of heroin and of unlawful possession with intent to deliver heroin. *Id.* at 729. The appellant argued that his arrest was unlawful and, therefore, his motion to suppress evidence should have been granted. *Id.* at 730. The Court of Criminal Appeals held that the arrest was valid under article 14.01, even though Officer Foster, who observed the felony, did not arrest the appellant. *Id.* The Court stated:

> [Officer Foster] had firsthand knowledge of the offense and relayed that knowledge to his fellow officers. Those officers watched appellant get into Foster's car, were aware of the prior telephone conversation setting up the deal, saw the pre-arranged signal from Foster confirming that appellant possessed drugs when he left Foster, and arrested appellant a few minutes later. Foster did not himself seize appellant, but he observed the arrest from about ¾ of a mile away. Foster was just as much a participant in the arrest as if he had seized appellant himself. There was no significant time lapse or other intervening event that would take this arrest out of the ambit of Art. 14.01.

*Id.* As in the case at hand, the appellant committed no offense within the physical presence of the arresting officer. Factually, the scenario in *Willis* differs from the present case in one important respect. Unlike Officer Foster, Officer Wilson did not actually see the arrest. Appellant contends that this one difference makes the article 14.01 exception unavailable and thus invalidates his arrest. *See McGowan v. State,* 689 S.W.2d 224 (Tex.Crim.App.1985) (Clinton J., dissenting).

While visual observation of the arrest stands as *a* factor under article 14.01, this Court does not consider its absence in the present circumstances to be *the* determining factor. The court in *Willis* drew attention to several facts that made that arrest valid, only one of which was visual observation. *Willis,* 669 S.W.2d at 730. Further, our review of the word "presence" reveals that its usage in article 14.01 denotes an awareness manifested through any of the senses. If one considers what alternatives were available to these officers, it becomes clear that it would not have been practical to have Officer Wilson present at the arrest or possible to get an arrest warrant in time to use it. The Court recognizes that the usefulness of undercover officers would be severely limited if their cover were exposed every time their work led to an arrest.

Other courts of appeals have also addressed the issue of which circumstances need to be present to have a valid article 14.01 arrest. *Caraballo v. State,* 706 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) presents a fact situation virtually identical to the one at hand. In *Caraballo,* the appellant offered to sell an undercover officer, Guerra, some heroin. *Id.* at 773. Officer Guerra left the appellant's apartment on the pretext of getting money, and, on Officer Guerra's prearranged signal, other officers entered the apartment and arrested the appellant. *Id.* On appeal, the appellant argued that because the arresting officers did not see the felony offense being committed, they were required to obtain an arrest warrant. *Id.* at 774. Citing *Willis,* the appellate

court found the arrest valid under article 14.01. *Id.* Significant circumstantial factors included: Guerra's participation as part of a team of officers present at the offense; Guerra's firsthand knowledge of the offense, transmitted to fellow officers; and Guerra's prearranged signal to the arresting officers. *Id.* The court concluded that Guerra "was an integral part of the arrest team and being such participated in the arrest of appellant." *Id.*

Most recently, the article 14.01 factors were discussed in *Oviedo v. State,* 767 S.W.2d 214 (Tex.App.—Corpus Christi 1989, no pet.). In *Oviedo,* the officer observing the felony also observed the arrest, though she did not make the arrest. *Id.* at 215. Actual observation of the arrest was just one factor considered by the appellate court when deciding the validity of the arrest under article 14.01. *Id.* at 217. Other factors included: firsthand observation of the felony by the undercover officer; the undercover officer's participation in a team of officers present at the scene of the offense; a relay of firsthand knowledge from the undercover officer to the arresting officers; and the short time lapse between observation of the felony and the arrest. *Id.*

By application of the elements emphasized in *Willis,* we hold that appellant's arrest was valid under the article 14.01 exception allowing a warrantless arrest. Appellant committed a felony in Officer Wilson's presence. Officer Wilson, acting as part of a team of officers present at the offense, relayed a detailed physical description of appellant to the arresting officers, as well as appellant's geographical location. A short time elapsed between the commission of the offense and the arrest. Although Officer Wilson did not visually observe the arrest, he was parked just two blocks away and did maintain radio communication with Officer Black throughout the arrest. During the arrest, Officer Wilson was informed step-by-step that appellant had been sighted; that appellant was wearing the distinctive clothing; that appellant was being taken into custody. Under these conditions, Officer Wilson's awareness of appellant's arrest constituted presence at the arrest. Within 30 minutes of the arrest, Officer Wilson identified the appellant as the person who sold him the heroin. Given these circumstances, Officer Wilson was just as much a participant in appellant's arrest as if he had seized the appellant himself. We hold the appellant's arrest to be lawful under *Willis* and article 14.01. Appellant's point of error is overruled and the judgment of the trial court is affirmed.