Romaldo ASTRAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1479–89.

Court of Criminal Appeals of Texas, En Banc.

Nov. 28, 1990.

Gary A. Udashen, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty. and Sharon Batjer, Asst. Dist. Atty., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant pled guilty to delivery of a controlled substance and was sentenced to fifteen years imprisonment. The Court of Appeals affirmed. *Astran v. State*, 780 S.W.2d 447 (Tex.App.—Dallas 1989). We granted appellant's petition for review to determine whether his motion to suppress a controlled substance found during the arrest should have been granted. We affirm.

Dallas officers, uniformed and undercover, were working in a combined effort to arrest drug offenders on the date of appellant's arrest. Officer Wilson was part of the team and was working undercover making street buys of illegal drugs. Wilson bought twenty dollars' worth of heroin from appellant and drove away from the scene of the sale. He immediately radioed uniformed Officer Black to make the arrest. Wilson gave a detailed description of appellant, which included appellants' height, weight, and location. Wilson specifically told Black that appellant was wearing a tee-shirt which spelled the words "Jesus Christ." Black found appellant in two minutes and arrested him. Wilson was parked two blocks away during the arrest and maintained radio contact with Black throughout the sighting and arrest. Wilson did not see the arrest. Within thirty minutes of the arrest Wilson identified appellant at the police station as the person who sold the drugs. During the arrest, Black found a small matchbox with five capsules of heroin on appellant's person which appellant sought to have suppressed at trial.

Appellant filed a pre-trial motion to suppress alleging that the drugs were discovered during an illegal search, and preserved his right to appeal the denial of the motion when he entered his guilty plea. On appeal, appellant reiterated his claim that the search was not proper under Article 14.01, V.A.C.C.P., because the officer who saw the felony did not actually make the arrest.

The Court of Appeals noted that Art. 14.01 applied, permitting an officer to arrest an offender without a warrant for an offense committed within the officer's presence or view. Following this Court's decision in *Willis v. State*, 669 S.W.2d 728 (Tex.Cr.App.1984), the Court of Appeals held that the officer who viewed the offense need not necessarily make the arrest under Art. 14.01.

The court acknowledged that *Willis* differed from the instant case in one significant way: the officer in *Willis* saw the arrest but in the instant case Wilson did not see the arrest. The court noted that visual observation was merely one factor considered in *Willis*, and held the word "presence" in Art. 14.01 denotes "an awareness manifested through any of the senses." *Astran*, 780 S.W.2d at 450. The court also referred to *Caraballo v. State*, 706 S.W.2d 773 (Tex.App.—Houston [14th] 1986, pet. ref'd), and *Oviedo v. State*, 767 S.W.2d 214 (Tex.App.—Corpus Christi 1989, no pet.), where other courts of appeals held that visual observation was merely one of several factors to consider when determining whether the officer who saw the offense had to arrest the offender.

Applying these case holdings to the facts of the instant case, the court held that Wilson's awareness of appellant's arrest

constituted presence at the arrest. Wilson saw the felony, was part of a team of officers present at the scene of the offense,[1] and relayed appellant's physical description and geographic location to the arresting officer. A short time elapsed between the commission of the offense and the arrest. Even though Wilson did not visually observe the arrest, he was parked two blocks away and maintained constant radio communication[2] with Black during the arrest. The court concluded that the arrest was proper under Art. 14.01.

In his petition, appellant contends that *Willis* and *Oviedo* do not apply because the arresting officers viewed the arrests, whereas in the instant case Wilson did not. Appellant claims that *Caraballo* is inapplicable because the significant facts of *Willis* were not present or were not discussed.

■ We find that the Court of Appeals properly applied *Willis*. In *Willis*, Officer Foster was working undercover. The defendant drove up next to Foster's car, left his car, entered Foster's car, and sold heroin to Foster. Uniformed officers were watching Foster's car and arrested the defendant after he returned to his car and drove away. On appeal, the defendant argued that the arrest was improper. This Court stated the following, *id.* at 730:

> Although Foster himself did not make the arrest, his situation is not like that of an informant under Art. 14.04 because he was part of a team of officers present at the scene of the offense. He had first-hand knowledge of the offense and relayed that knowledge to his fellow officers. Those officers watched appellant get into Foster's car, were aware of the prior telephone conversation setting up

the deal, saw the pre-arranged signal from Foster confirming that appellant possessed drugs when he left Foster, and arrested appellant a few minutes later. Foster did not himself seize appellant, but he observed the arrest from about ¾ of a mile away. Foster was just as much a participant in the arrest as if he had seized appellant himself. There was no significant time lapse or other intervening event that would take this arrest out of the ambit of Art. 14.01.

Thus, the Court of Appeals properly concluded that under *Willis* the viewing officer need not in all cases personally make the arrest under Art. 14.01.

Likewise, the Court of Appeals properly relied on *Caraballo*. In *Caraballo*, Officer Guerra was working undercover and arranged to buy cocaine from the defendant. He went to the defendant's apartment, went inside, and the defendant's cohort opened a bag containing cocaine. Guerra said he needed to get the money, left the apartment, gave a pre-arranged bust signal, and a group of officers went inside and arrested the defendant. The Houston [14th] Court of Appeals held, that pursuant to *Willis*, Guerra did not have to personally make the arrest because he "was an integral part of the arrest team and being such participated in the arrest of appellant" so that Art. 14.01 applied. *Caraballo*, 706 S.W.2d at 774. Thus, *Caraballo* applies.

Last, the Court of Appeals did not misapply *Oviedo*. In that case, the defendant offered to sell drugs to an undercover officer, Vinson. Vinson told two other officers of the offer to sell and they arrested the defendant. The officers did not see the

---

1. The record shows that the uniformed officers were parked two blocks away from the scene of the offense and did not see the offense take place.

2. In *Woodward v. State,* 668 S.W.2d 337 (Tex.Cr. App.1982), this Court wrote:
   In *Moreno–Vallejo v. United States,* 414 F.2d 901, 904 (5th Cir.1969), it was stated that: "... The courts have had occasion to recognize that effective police work in today's highly mobile society requires cooperative utilization of police resources. They have, accordingly, asserted that knowledge in one sector of

a police system can be availed of for action in another, assuming some degree of communication between the two. *See, e.g., United States v. Pitt,* 382 F.2d 322 (4th Cir.1967), where the court said (at p. 324) of a contention that the arresting officer must have *personal* knowledge of the facts constituting probable cause:
   "'... Probable cause, however, can rest upon the *collective* knowledge of other police, rather than solely on that of the officer who actually makes the arrest ...' (Emphasis supplied)." [Emphasis in original]

actual offer to sell, but Vinson watched the arrest from a short distance away. The Corpus Christi Court of Appeals cited *Willis* and held that even though Vinson did not herself arrest the defendant, she was "as much a participant in the arrest as if she had seized appellant herself." *Oviedo*, 767 S.W.2d at 217. Thus, the holding in *Oviedo* supports the notion that every Art. 14.01 arrest need not be made by the viewing officer.

■ Just as the officer may rely on other officers in making an Art. 14.01 arrest, the officer may also rely on lay citizens in determining that probable cause exists to believe an offense was committed. In *Beverly v. State*, 792 S.W.2d 103 (Tex.Cr.App. 1990), this Court considered a warrantless arrest under Art. 14.01(b). An apartment manager told the defendant not to trespass on the apartment complex property, and gave a list to police of persons she had "trespass warned." The list included the defendant's name. Police were present when the defendant drove onto apartment property and the manager stated that she had trespass warned the defendant. The officer checked the list and found the defendant's name, then arrested the defendant for trespassing. This Court held that the officer did not have to personally view every element of the offense before a proper Art. 14.01 arrest could be made. "[P]robable cause for a warrantless arrest under Art. 14.01(b), supra, may be based on prior knowledge and personal observations. Moreover, an officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause assessment." *Beverly*, supra at 105. Thus, an officer may rely on others in determining that probable cause exists, and may in some instances rely on other officers in making the actual arrest.

■ We find that the Court of Appeals properly analyzed the issue in the instant case. The cited cases support the holding that the viewing officer need not in all cases personally make the Art. 14.01 arrest. The next issue to consider is under what circumstances Art. 14.01 permits arrest by a non-viewing officer.

In the cases previously discussed, the viewing officer was so much a part of the arrest, or such an integral part of the arrest team, that he or she effectively participated in the arrest. Also, the officer was substantially aware of the circumstances of the arrest. As long as the facts show that the viewing officer effectively participated in the arrest and was fully aware of the circumstances of the arrest, then Art. 14.01 is satisfied.

■ The next issue is whether Wilson had to personally make the arrest in the instant case. Wilson was part of a combined effort to arrest drug offenders. He observed the offense, gave officers appellant's description, and in two minutes, the officers found appellant. Wilson was parked two blocks away from the scene of the arrest, and maintained radio contact with the officers as appellant was sighted and arrested. We agree with the Court of Appeals that Wilson's participation in and awareness of the circumstances of the arrest made him "just as much a participant in appellant's arrest as if he had seized the appellant himself." *Astran*, 780 S.W.2d at 451. The arrest was proper under Art. 14.01.

The judgment of the Court of Appeals is affirmed.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

After carefully reconsidering whether *Willis v. State*, 669 S.W.2d 728 (Tex.Cr. App.1984), upon which the majority opinion in this cause so heavily relies, was correctly decided, I have now concluded that it was wrongly decided, and should be expressly overruled. Other cases, such as *Beverly v. State*, 792 S.W.2d 103 (Tex.Cr. App.1990), which adhere to the extremely flawed principle of law enunciated in *Willis, supra*, should also be expressly overruled.

Chapter Fourteen of the Code of Criminal Procedure enumerates the only exceptions when a peace officer is authorized to arrest another individual without a warrant. Art. 14.01(b), V.A.C.C.P., the only

statute that was implicated in *Willis, supra,* and the only statute that is implicated in this cause, expressly provides: "A peace officer may arrest an offender without a warrant for any offense committed in the presence or within his view." As plainly seen, the statute is clearly written. It provides that a peace officer may arrest without a warrant if, *in his presence or within his view,* he witnesses the commission of *any* criminal offense. There is nothing within that statute that allows one or more third parties to make an arrest on the basis of information supplied by the officer in whose presence or within whose view the offense was committed. This Court clearly erred in *Willis* in applying the informant analogy to the statute. See, however, Art. 14.04, V.A.C.C.P. Art. 14.01(b), *supra,* which by its very wording obviously places the focus of attention on whether the offense was committed *within the presence or within the view of the arresting officer,* and not on what information a peace officer might have relayed to another peace officer, who makes the actual arrest. The question in this cause is not whether the arresting officer might have had probable cause to make the arrest; instead, the issue is whether the arresting officer was authorized to make the arrest pursuant to the terms of Art. 14.01(b), *supra,* and it matters not whether the officer, who relayed to the officer who made the actual arrest, had "probable cause," or either saw or did not see the arrest take place.

I find that when it comes to interpreting Art. 14.01(b), supra, Justice Burgess of the Beaumont Court of Appeals, who wrote that Court's majority opinion in *Beverly v. State,* 764 S.W.2d 353, 354–355 (Tex.App.–Beaumont 1989), hit the nail on the head when he stated the following in that opinion:

> For a warrantless arrest pursuant to article 14.01, [to be valid] however, *probable cause for arrest must arise from facts within the arresting officer's own knowledge and observations, not from hearsay information.* (My emphasis.)

Also see and compare Art. 14.02, V.A.C.C.P., regarding the power of a magistrate to order a warrantless arrest to be made when a felony or breach of the peace has been committed in his presence or within his view. See also Judge Clinton's succinctly written dissenting opinion in this Court's opinion of *Beverly, supra:* "[T]he majority construction of Art. 14.01(b) is contrary to the plain language and intendment thereof."

In this instance, other than being told by the officer in whose presence a felony was committed to arrest a particularly described individual, who turned out to be the appellant, there is no evidence that reflects or indicates that the officer who made the actual arrest of appellant was authorized to arrest appellant pursuant to Art. 14.01(b), *supra.*

I believe that what this Court's majority does today, as it did in *Willis,* supra, and *Beverly, supra,* is to act legislatively, and not judicially, and, in essence, to actually vote to repeal Art. 14.01(b), supra. This Court, however, in this instance, has not been given authority by the voters of this State to act legislatively. If it is the will of the voters of this State, through its Legislature, to repeal Chapter Fourteen of the Code of Criminal Procedure, then so be it, but please let such occur not in this forum but in the forum where the voters of this State have designated where their laws will be enacted—the Legislature.

Therefore, I respectfully dissent.