**Solomon HENDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–93–075–CR.**

Court of Appeals of Texas,
Waco.

Nov. 17, 1993.

Philip C. Banks, Bryan, for appellant.

Bill R. Turner, Dist. Atty., Margaret Lalk, Asst. Dist. Atty., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

CUMMINGS, Justice.

Solomon Henderson appeals his conviction for possession of a controlled substance. Henderson was charged by a two-count indictment with the felony offenses of delivery of a controlled substance (count one) and possession of a controlled substance (count two). After an evidentiary hearing, the trial court denied Henderson's motion to suppress evidence obtained as a result of his warrant-

less arrest. Henderson then pleaded no contest to both counts of the indictment. The trial court found him guilty and assessed punishment, enhanced by two prior felony convictions, at forty-five years in prison on count one and twenty years in prison on count two. In two points of error, he appeals his conviction for possession of a controlled substance.

At the hearing on Henderson's motion to suppress, Officer Hugh Wallace, an officer with the Bryan Police Department's Street Crimes Apprehension Team, testified that on January 15, 1993, he and four other officers were working surveillance for Billy Jarrett and Dennis Thane, two undercover officers conducting a "buy-bust" operation in the 1200 block of Henderson Avenue. Wallace testified that at 11:30 p.m. he and the other surveillance officers were dispatched by Jarrett and Thane, who had just purchased two rocks of cocaine in exchange for a marked twenty dollar bill. Over a police radio the undercover officers transmitted a description of the suspect—a tall black man wearing a blue cap and dark blue coveralls. Wallace testified that he arrived at the pre-arranged location within twenty to thirty seconds of the radio transmission.

After securing the area and talking to two other people, Wallace directed his attention to Henderson, who matched the description provided by the undercover officers. Another officer had already conducted a pat-down search and indicated that there were some items in the left- and right-front pockets of Henderson's coveralls. Wallace informed Henderson that they were conducting a narcotics investigation, that someone matching his description had just sold some drugs, and that they were searching for narcotics and some money. Henderson indicated that he did not have any narcotics on him. According to Wallace, when he asked if it was okay to conduct a search, Henderson said, "That's fine." Wallace found a piece of paper currency and a matchbox in Henderson's left-front pocket, a zippered pocket that was left open. Wallace removed the currency and compared it to a photocopy of the twenty dollar bill used in the "buy-bust" operation.

At that point, Henderson was informed that he was under arrest. Continuing the search, Wallace found chips of crack cocaine in the right-front pocket of Henderson's coveralls. Henderson was then taken to the county jail, where Jarrett and Thane verified that he was the suspect from whom they had purchased two rocks of cocaine.

At the hearing on the motion to suppress Henderson argued that, because he was in fact wearing a black cap and his coveralls were actually dark green, the surveillance officers lacked probable cause to stop and arrest him for delivery of cocaine. Wallace testified, however, that it was very dark at the location and that Henderson's coveralls were dark green, "darker than olive drab." According to Wallace, because the suspect was wearing dark colors, the description provided by the undercover officers during the nighttime hours was "a good description." Furthermore, the jail administrator and records custodian, called as a witness for the defense, testified that the inventory of Henderson's property, made at the time Henderson was booked into jail, listed a pair of "blue coveralls."

■■■ In point one Henderson contends that the trial court erred in denying his motion to suppress evidence obtained as a result of his warrantless arrest because the arrest was not based on probable cause as required by the Fourth Amendment to the United States Constitution. Under federal law, probable cause to arrest depends upon whether, at the moment the arrest was made, facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense.[1] Because Wallace and the other surveillance officers immediately responded to the radio transmission, and Henderson was the only one in the area who substantially matched the description provided by the undercover officers, we hold that the officers had probable cause to arrest Henderson for delivery of cocaine. We overrule point of error one.

1. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

In point two Henderson contends that the trial court erred in denying his motion to suppress evidence obtained as a result of his warrantless arrest because the arrest was not based on probable cause as required by article I, section nine, of the Texas Constitution. In his argument and authorities under point two, Henderson argues that the arrest was improper under Texas law because it was not authorized by article 14.04 or article 14.03(a)(1) of the Texas Code of Criminal Procedure.[2] The State argues, however, that because the delivery of cocaine offense was committed in the presence of Officers Jarrett and Thane, the arrest was authorized by article 14.01 of the Code of Criminal Procedure.[3] Article 14.01 does not require the officer who views the commission of a crime to be the arresting officer.[4] Jarrett and Thane did not have to personally make the arrest under article 14.01 because they were an integral part of the arrest team.[5] They transmitted Henderson's description to the surveillance officers, who arrived at the location in less than a minute. Furthermore, Wallace was specifically working "surveillance" for a pre-planned "buy-bust" operation and was familiar with the area. Finally, Jarrett and Thane verified Henderson's identity a short time later at the county jail. As a result, we find that the viewing officers' participation in and awareness of Henderson's arrest made them just as much a participant in Henderson's arrest as if they had seized Henderson themselves.[6] Therefore, the arrest was proper under article 14.01.

In his argument under point two Henderson also relies upon *Rance v. State* for the proposition that probable cause was not sufficient to support an arrest under the Texas Constitution[7]. In *Rance*, however, the arresting officer could remember only a general description of the suspect as provided by the viewing officer, even the general description was substantially different from that of the defendant at the time of the arrest, and the undercover officer later informed the arresting officer that the defendant was not one of the suspects from whom he had purchased cocaine.[8] In this case the State presented evidence that Wallace had probable cause to arrest Henderson, a tall black man wearing dark coveralls and a dark cap, because he substantially matched the description provided by the undercover officers.[9] Accordingly, we overrule point of error two.

We affirm the judgment.

---

2. *See* Tex.Code Crim.Proc.Ann. art. 14.03(a)(1) (Vernon Supp.1993), art. 14.04 (Vernon 1977).

3. *See id.* art. 14.01 (Vernon 1977).

4. *Astran v. State*, 799 S.W.2d 761, 763 (Tex.Crim. App.1990).

5. *See id.*

6. *See id.* at 764.

7. *See Rance v. State*, 815 S.W.2d 633 (Tex.Crim. App.1991).

8. *Id.* at 634–35.

9. *See id.* at 636.