**Anthony Chris COLEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–01070–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 22, 2011.

Discretionary Review Refused April 18, 2012.

---

Allen C. Isbell, Houston, TX, for Appellant.

Mandy Goldman Miller, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

After the denial of a motion to suppress evidence of drugs found in his pocket, appellant Anthony Chris Coleman pleaded guilty to possession of cocaine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D), § 481.112(a), (d) (West 2011). He also pleaded true to three enhancement paragraphs for possession of cocaine with intent to deliver, unauthorized use of a motor vehicle, and delivery of a controlled substance. Consistent with an agreed recommendation, the trial court sentenced him to 45 years in prison. The trial court also granted him permission to appeal.

Coleman brings two issues on appeal, both relating to the motion to suppress evidence. He contends that law enforcement officers violated Code of Criminal Procedure article 14.03(g)(2) when they stopped him for a traffic violation. He

also contends that a pat-down search conducted in connection with his arrest was unconstitutional. We affirm.

## Background

Houston Police Department Sergeant Brent Batts received an anonymous tip that a person driving a truck would arrive at a home to receive a large amount of cash or narcotics. Batts was working undercover when he began his surveillance of the house, which was located in the City of Houston, within Harris County. Another undercover officer, Officer Weido, also participated in the surveillance from a separate unmarked car. A uniformed officer, Officer Raven had been assigned to assist them.

Coleman was observed arriving at the house in a truck fitting the description received from the tipster. Both Batts and Weido followed Coleman after he departed. Then, while still in Houston and still within Harris County, Batts observed Coleman failing to signal a turn. *See* TEX. TRANSP. CODE ANN. §§ 543.001, 545.104 (West 1999). Batts contacted Raven by radio and requested that Raven initiate an arrest. The three officers remained in radio contact. When Batts made a turn to avoid detection, he lost visual contact with Coleman. Weido, however, maintained visual contact and was able to direct both Raven and Batts to Coleman's ultimate destination, a residence in Missouri City, still within Harris County, approximately one-half mile away from where the traffic violation occurred.

No more than five minutes after the traffic violation, Coleman was arrested at his house. Raven turned on his patrol car's emergency lights as Coleman arrived. Raven ordered Coleman to remain in his truck, but he nevertheless got out, walked toward the garage, threw a black bag into the garage, and then walked back towards Raven. Raven conducted a pat-down search out of concern for his safety, and in so doing he noticed a bulge in Coleman's left jacket pocket and found cocaine. Batts arrived at the house as Raven was placing Coleman under arrest. A search warrant for Coleman's house was obtained, and additional cocaine was found inside.

Coleman moved to suppress all evidence of cocaine found by the officers. At the conclusion of the evidentiary hearing on the motion, the trial court specifically found that "Officer Batts immediately directed the arrest" and that "Officer Raven simply assisted him in making that arrest." The trial court denied the motion, leading to Coleman's guilty plea.

## Analysis

### I. Legality of arrest

■ Coleman argues that Raven lacked authority to arrest him in Missouri City because he was a Houston police officer. He advocates a strict literal interpretation of the statute authorizing a peace officer outside of his jurisdiction to arrest "a person who commits any offense within the officer's presence or view" when "the offense is committed in the county or counties in which the municipality employing the peace officer is located." TEX.CODE CRIM. PROC. ANN. art. 14.03(g)(2) (West Supp. 2011).[1] Batts and Raven were both employed by the City of Houston, located in Harris County, where Coleman was arrested. The question is whether the arrest satisfied the statutory requirement of being committed "within the officer's presence or view."

---

1. On appeal, Coleman suggests this language "must be construed literally ... because it involves a significant intrusion into a citizen's freedom of movement." But no arguments about the constitutional right to travel were raised in the trial court, so the argument is waived. TEX.R.APP. P. 33.1(a).

Prior to the enactment of Article 14.03(g)(2) in 2005,[2] the Court of Criminal Appeals had on several occasions construed substantially similar language in an analogous statutory context. Article 14.01(b) provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." *Id.* art. 14.01(b) (West 2005). In *Willis v. State,* 669 S.W.2d 728 (Tex.Crim.App.1984), the Court held that the officer in whose presence an offense was committed need not personally seize the appellant to make an arrest under Article 14.01, when that officer was part of a surveillance team and participated in the arrest by relaying his knowledge to fellow officers and by observing the arrest from less than a mile away. *See Willis,* 669 S.W.2d at 730. Similarly, in *Astran v. State,* 799 S.W.2d 761 (Tex.Crim.App. 1990), the Court held that "[a]s long as the facts show that the viewing officer effectively participated in the arrest and was fully aware of the circumstances of the arrest, then Art. 14.01 is satisfied." *Astran,* 799 S.W.2d at 764. In *Astran,* the undercover officer who observed the offense "saw the felony, was part of a team of officers present at the scene of the offense, and relayed appellant's physical description and geographic location to the arresting officer." *Id.* at 762–63. Although the undercover officer "did not visually observe the arrest, he was parked two blocks away and maintained constant radio communication" with the arresting officer. *Id.* at 763 (footnote omitted).

Coleman's challenge presumes that Officer Raven was the arresting officer for purposes of Article 14.03(g)(2). That analysis is inconsistent with *Willis* and *Astran,* both of which found Article 14.01 to be satisfied when a peace officer observed an offense and participated in the arrest, despite the fact that the observing officer did not physically seize the suspect to make the arrest. *See Astran,* 799 S.W.2d at 764; *Willis,* 669 S.W.2d at 730. As found by the trial court, the arrest was made by Officer Batts, assisted by Officer Raven.

Coleman argues that *Astran's* reasoning should not be applied to Article 14.03(g)(2)'s authorization of arrests for traffic offenses committed "within the officer's presence or view." He contends that Article 14.03 reflects a legislative intent to treat traffic violations differently than other more serious offenses, for which a peace officer's authority to make arrests is not subject to the same geographic restrictions.[3] While traffic offenses are treated uniquely and the universe of peace officers authorized to arrest for traffic offenses committed within their "presence or view" is more limited than for other offenses, this distinction does not justify applying a different analysis for when an offense is committed "within the officer's presence or view." To the contrary, adopting an interpretation of these terms different from Article 14.01's reference to "any offense committed in [a peace officer's] presence or within his view" would violate the presumption of statutory consistency, whereby "a word or phrase that is used within a

**2.** Act of May 26, 2005, 79th Leg., R.S., ch. 847 § 1, 2005 Tex. Gen. Laws 2889–90.

**3.** *See* Tex.Code Crim. Proc. Ann. art. 14.03(a)-(c) (establishing peace officer's authority for warrantless arrest based upon probable cause to believe a felony or other specifically identified offense is imminent or has been threatened or committed); *id.* art. 14.03(d) (establishing peace officer's authority for warrantless arrest outside his jurisdiction when certain offenses are committed "within the officer's presence or view," including a felony, breach of the peace, disorderly conduct, or public intoxication, subject to requirement of subsequent notice to a law enforcement agency having jurisdiction).

single statute generally bears the same meaning throughout that statute and that when a second statute refers to the first statute, words or phrases within the first statute will bear their same meaning in the second statute." *Ex parte Keller*, 173 S.W.3d 492, 498 (Tex.Crim.App.2005). "Although that presumption may give way if the legislature has clearly intended a different result," *id.*, the fact that the Legislature has authorized peace officers to make certain warrantless arrests in any location for specified offenses, *see* Tex. Code Crim. Proc. Ann. arts. 14.01, 14.03(a)-(d), but only in the county of the officer's jurisdiction for traffic offenses, *see id.* art. 14.03(g)(2), does not provide a clear indication that different meanings were intended for when an offense is committed in an officer's "presence" or "view."

Moreover, Coleman's argument also violates the rule of acquiescence, whereby "it is presumed that the legislature is aware of case law affecting or relating to the statute." *Miller v. State*, 33 S.W.3d 257, 260 (Tex.Crim.App.2000). "When the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Marin v. State*, 891 S.W.2d 267, 271–72 (Tex.Crim.App. 1994). Presuming the Legislature to have been aware of the definitive interpretations in 1984 (*Willis*) and 1990 (*Astran*) of when an offense is committed in the "presence" or "view" of a peace officer, we should not interpret those terms differently for purposes of the Legislature's 2005 enactment of Article 14.03(g)(2). Accordingly, Coleman's arrest was authorized by Article 14.03(g)(2).

## II. Legality of pat-down search

Coleman also challenges the reasonableness of the pat-down search, but this objection was waived at trial. *See*

Tex.R.App. P. 33.1(a); *Shelling v. State*, 52 S.W.3d 213, 223–24 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (en banc) (holding issue not preserved for appeal when trial objection does not comport with argument on appeal and specific grounds were not apparent from context). The argument that Officer Raven had no justification to frisk Coleman out of concern for his safety was not obvious from his written motion to suppress, and at the evidentiary hearing on the motion to suppress, Coleman's counsel represented to the court that "we are hanging our hat on 14.03(g)(2) as admitted by the Legislature in 2005." All of the arguments of counsel were focused solely on that issue.

### Conclusion

We overrule Coleman's two issues, and we affirm the judgment of the trial court.

Justice SHARP, dissenting. Dissent to follow.