Opinion issued December
22, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01070-CR

———————————

 

Anthony Chris Coleman, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 184th District
Court

Harris County, Texas



Trial Court Case No. 1101320

 



 

 

 

 

O P I N I O N

          After
the denial of a motion to suppress evidence of drugs found in his pocket, appellant
Anthony Chris Coleman pleaded guilty to possession of cocaine with
intent to deliver.  See Tex. Health & Safety Code Ann. § 481.102(3)(D), § 481.112(a), (d) (West 2011).  He also pleaded true to three
enhancement paragraphs for possession of cocaine with intent to deliver,
unauthorized use of a motor vehicle, and delivery of a controlled substance.  Consistent with an agreed recommendation, the
trial court sentenced him to 45 years in prison.  The trial court also granted him permission
to appeal.

          Coleman brings two issues on appeal,
both relating to the motion to suppress evidence.  He contends that law enforcement officers violated
Code of Criminal Procedure article 14.03(g)(2) when they stopped him for a
traffic violation.  He also contends that
a pat-down search conducted in connection with his arrest was unconstitutional.  We affirm.

Background

          Houston
Police Department Sergeant Brent Batts received an anonymous tip that a person
driving a truck would arrive at a home to receive a large amount of cash or
narcotics.  Batts was working undercover
when he began his surveillance of the house, which was located in the City of
Houston, within Harris County.  Another
undercover officer, Officer Weido, also participated in the surveillance from a
separate unmarked car.  A uniformed
officer, Officer Raven had been assigned to assist them.

          Coleman was
observed arriving at the house in a truck fitting the description received from
the tipster.  Both Batts and Weido
followed Coleman after he departed.  Then,
while still in Houston and still within Harris County, Batts observed Coleman
failing to signal a turn.  See Tex.
Transp. Code Ann. §§ 543.001, 545.104 (West 1999).  Batts contacted Raven by radio and requested
that Raven initiate an arrest.  The three
officers remained in radio contact.  When
Batts made a turn to avoid detection, he lost visual contact with Coleman.  Weido, however, maintained visual contact and
was able to direct both Raven and Batts to Coleman’s ultimate destination, a
residence in Missouri City, still within Harris County, approximately one-half
mile away from where the traffic violation occurred.  

No more than five minutes after the
traffic violation, Coleman was arrested at his house.  Raven turned on his patrol car’s emergency
lights as Coleman arrived.  Raven ordered
Coleman to remain in his truck, but he nevertheless got out, walked toward the
garage, threw a black bag into the garage, and then walked back towards Raven.  Raven conducted a pat-down search out of
concern for his safety, and in so doing he noticed a bulge in Coleman’s left
jacket pocket and found cocaine.  Batts
arrived at the house as Raven was placing Coleman under arrest.  A search warrant for Coleman’s house was
obtained, and additional cocaine was found inside.

Coleman moved to suppress all evidence
of cocaine found by the officers.  At the
conclusion of the evidentiary hearing on the motion, the trial court
specifically found that “Officer Batts immediately directed the arrest” and
that “Officer Raven simply assisted him in making that arrest.”  The trial court denied the motion, leading to
Coleman’s guilty plea.

Analysis

I.                 
Legality
of arrest

          Coleman argues that Raven lacked
authority to arrest him in Missouri City because he was a Houston police
officer.  He advocates a strict literal
interpretation of the statute authorizing a peace officer outside of his
jurisdiction to arrest “a person who commits any offense within the officer’s
presence or view” when “the offense is committed in the county or counties in
which the municipality employing the peace officer is located.”  Tex. Code Crim. Proc. Ann. art. 14.03(g)(2)
(West Supp. 2011).[1]  Batts and Raven were both employed by the
City of Houston, located in Harris County, where Coleman was arrested.  The question is whether the arrest satisfied
the statutory requirement of being committed “within the officer’s presence or
view.”

          Prior to the enactment of Article
14.03(g)(2) in 2005,[2]
the Court of Criminal Appeals had on several occasions construed substantially
similar language in an analogous statutory context.  Article 14.01(b) provides that “[a] peace
officer may arrest an offender without a warrant for any offense committed in
his presence or within his view.”  Id. art. 14.01(b) (West 2005).  In Willis
v. State, 669 S.W.2d 728 (Tex. Crim. App. 1984), the Court held that the
officer in whose presence an offense was committed need not personally seize
the appellant to make an arrest under Article 14.01, when that officer was part
of a surveillance team and participated in the arrest by relaying his knowledge
to fellow officers and by observing the arrest from less than a mile away.  See
Willis, 669 S.W.2d at 730.  Similarly, in Astran v. State, 799 S.W.2d 761 (Tex. Crim. App. 1990), the Court
held that “[a]s long as the facts show that the viewing officer effectively
participated in the arrest and was fully aware of the circumstances of the
arrest, then Art. 14.01 is satisfied.”  Astran, 799 S.W.2d at 764.  In Astran, the undercover officer who
observed the offense “saw the felony, was part of a team of officers present at
the scene of the offense, and relayed appellant’s physical description and
geographic location to the arresting officer.” 
Id. at 762–63.  Although the undercover officer “did not
visually observe the arrest, he was parked two blocks away and maintained
constant radio communication” with the arresting officer.  Id.
at 763 (footnote omitted).

          Coleman’s challenge presumes that
Officer Raven was the arresting officer for purposes of
Article 14.03(g)(2).  That analysis
is inconsistent with Willis and Astran, both of which found Article
14.01 to be satisfied when a peace officer observed an offense and participated
in the arrest, despite the fact that the observing officer did not physically
seize the suspect to make the arrest.  See Astran, 799 S.W.2d at 764; Willis, 669 S.W.2d at 730.  As found by the trial court, the arrest was
made by Officer Betts, assisted by Officer Raven.

          Coleman argues that Astran’s reasoning should not be applied
to Article 14.03(g)(2)’s authorization of arrests for traffic offenses
committed “within the officer’s presence or view.”  He contends that Article 14.03 reflects a
legislative intent to treat traffic violations differently than other more
serious offenses, for which a peace officer’s authority to make arrests is not
subject to the same geographic restrictions.[3]  While traffic offenses
are treated uniquely and the universe of peace officers authorized to arrest
for traffic offenses committed within their “presence or view” is more limited
than for other offenses, this distinction does not justify applying a different
analysis for when an offense is committed “within the officer’s
presence or view.”  To the contrary, adopting
an interpretation of these terms different from Article 14.01’s reference to
“any offense committed in [a peace officer’s] presence or within his view” would
violate the presumption of statutory consistency, whereby “a word or phrase
that is used within a single statute generally bears the same meaning
throughout that statute and that when a second statute refers to the first
statute, words or phrases within the first statute will bear their same meaning
in the second statute.”  Ex parte Keller, 173 S.W.3d 492, 498
(Tex. Crim. App. 2005).  “Although that
presumption may give way if the legislature has clearly intended a different
result,” id., the fact that the
Legislature has authorized peace officers to make certain warrantless arrests
in any location for specified offenses, see
Tex. Code Crim. Proc. Ann.
arts. 14.01, 14.03(a)–(d),
but only in the county of the officer’s jurisdiction for traffic offenses, see id. art. 14.03(g)(2),
does not provide a clear indication that different meanings were intended for
when an offense is committed in an officer’s “presence” or “view.”

          Moreover, Coleman’s argument also
violates the rule of acquiescence, whereby “it is presumed that the legislature
is aware of case law affecting or relating to the statute.”  Miller
v. State, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000).  “When the Legislature meets, after a
particular statute has been judicially construed, without changing that
statute, we presume the Legislature intended the same construction should
continue to be applied to that statute.” 
Marin v. State, 891 S.W.2d
267, 271–72 (Tex. Crim. App. 1994). 
Presuming the Legislature to have been aware of the definitive
interpretations in 1984 (Willis) and
1990 (Astran) of when an offense is
committed in the “presence” or “view” of a peace officer, we should not
interpret those terms differently for purposes of the Legislature’s 2005
enactment of Article 14.03(g)(2).  Accordingly, Coleman’s arrest was authorized
by Article 14.03(g)(2).

II.              
Legality
of pat-down search

          Coleman also challenges the
reasonableness of the pat-down search, but this objection was waived at trial.  See Tex. R. App. P. 33.1(a); Shelling v. State, 52 S.W.3d 213, 223–24
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (en banc) (holding issue not
preserved for appeal when trial objection does not comport with argument on
appeal and specific grounds were not apparent from context).  The argument that Officer Raven had no
justification to frisk Coleman out of concern for his safety was not obvious
from his written motion to suppress, and at the evidentiary hearing on the
motion to suppress, Coleman’s counsel represented to the court that “we are
hanging our hat on 14.03(g)(2) as admitted by the Legislature in 2005.”  All of the arguments of counsel were focused
solely on that issue.

Conclusion

          We
overrule Coleman’s two issues, and we affirm the judgment of the trial court.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Sharp, dissenting.  Dissent to follow.

Publish.  TEX. R. APP. P. 47.2(b).











[1]
          On
appeal, Coleman suggests this language “must be construed literally . . .
because it involves a significant intrusion into a citizen’s freedom of
movement.”  But no arguments about the
constitutional right to travel were raised in the trial court, so the argument
is waived.  Tex. R. App. P. 33.1(a).

 





[2]
        Act
of May 26, 2005, 79th Leg., R.S., ch. 847 §1, 2005 Tex. Gen. Laws 2889–90.





[3]
          See
Tex. Code Crim. Proc. Ann. art. 14.03(a)–(c)
(establishing peace officer’s authority for warrantless arrest based upon
probable cause to believe a felony or other specifically identified offense is
imminent or has been threatened or committed); id. art. 14.03(d) (establishing peace officer’s authority for
warrantless arrest outside his jurisdiction when certain offenses are committed
“within the officer’s presence or view,” including a felony, breach of the
peace, disorderly conduct, or public intoxication, subject to requirement of
subsequent notice to a law enforcement agency having jurisdiction).