**Affirmed and Memorandum Opinion filed August 4, 2015.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-14-00752-CR

**JACINTO URAPO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1395175**

## M E M O R A N D U M   O P I N I O N

Appellant pleaded guilty to robbery and was placed on deferred adjudication probation. The State moved to adjudicate guilt, alleging among other things that appellant violated a term of probation by "[c]ommitting an offense against the laws of Texas, to wit: the defendant was charged with Evading Arrest on or about April 24, 2014 in Harris County, Texas." The trial court found the allegation true, revoked appellant's deferred adjudication probation, adjudicated guilt, and assessed punishment at five years' confinement. Appellant contends the evidence

is legally insufficient to prove (1) his identity and (2) that he evaded arrest rather than detention.

We hold that the evidence is legally sufficient, and we affirm.

SUFFICIENCY OF THE EVIDENCE

First we review the standards for the sufficiency of the evidence in the context of probation revocation proceedings. Then we review the evidence and address each of appellant's contentions.

## A. Legal Standards

To revoke deferred adjudication probation, the State must prove the violation of a condition of probation by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). The State must therefore prove the "greater weight of the credible evidence . . . would create a reasonable belief that the defendant has violated a condition of his probation." *Id.* at 865 (quotation omitted).

A legal sufficiency review in a probation revocation appeal is "less rigorous" compared to an appeal from a conviction where the burden of proof is beyond a reasonable doubt. *Id.* This standard "has been described as a review for whether there is 'more than a scintilla' of evidence." *Id.* (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010)). This standard is not met when "the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence or when the finder of fact must guess whether a vital fact exists." *Id.* (footnote and quotations omitted). The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

**B.      Review of the Evidence**

Houston Police Officer Peter Ungaro testified that he and his partner were observing an apartment complex during an undercover operation. Ungaro sat in an unmarked vehicle about twenty feet from a group of five people who were smoking marihuana. Ungaro identified appellant in court as one of the five people in the group smoking marihuana.

Ungaro's partner sat in a different vehicle and saw one of the men from the group toss a purse in a dumpster. After Ungaro heard a "be on the lookout" come over the radio for a robbery suspect, the officers radioed for uniformed officers to arrive and make contact with the group. Ungaro testified that as the uniformed officers arrived with emergency signal lights activated, "the suspects saw the police cars coming, police officers now got out of the cars and said stop police 'cause they started to run through the complex and they told them to stop police again and so they continued to run through the complex." Ungaro testified that appellant was one of the individuals who ran. Ungaro testified further that appellant "was part of that group that was out there smoking Marihuana and part of that group that evaded from the police officers." Appellant escaped apprehension at that time but later returned to the apartment complex and was arrested.

Officer Clifton Mays was one of the uniformed police officers. He testified, "As we came in we saw a group of males hanging out in front of the apartment complex. Pretty much we drove in. As we approached we got closer hit our lights, hit our siren, get out the vehicle, announce police and that's when the crowd kind of dispersed and one of the defendants bolted towards the west of the complex." Mays saw appellant "turn[] at us" before taking off running. Mays said "police" and "stop," and appellant turned toward the officers, looked at them, and "bolted." Mays was "really alerted" to appellant because appellant was wearing a red shirt.

3

## C. Sufficient Evidence of Identity

Appellant contends the evidence fails to prove that appellant was one of the men at the apartment complex when the uniformed officers arrived because of alleged conflicts in the testimonies of Ungaro and Mays, and it "belies reason" that appellant would return to the apartment complex while the police were still there.

Regarding inconsistencies, appellant contends that Ungaro testified that all of the people in the group ran from the police while Mays testified that the only individual who ran was appellant. On cross-examination, Mays testified, "Yes. That's the one yes," when asked, "Let me be—you talked with the prosecutor about how you saw just one Hispanic male ran. Right?" Mays, however, testified that the group "dispersed and one of the defendants bolted towards the west of the complex." Mays's use of the word "dispersed" is consistent with Ungaro's testimony that all of the suspects "ran," although the officers may have used different words. The trial court reasonably could have credited the testimony of both officers, or only one of them. *See Hacker*, 389 S.W.3d at 865.

Appellant points to other minor inconsistencies, such as whether the uniformed officers activated the lights as soon as they entered the complex or when they approached the suspects, and whether the suspects began to flee before or after the uniformed officers exited their vehicle. Even if there are some minor inconsistencies in the testimony, however, the trial court was the sole judge of the credibility and weight of the evidence. *See id.*

As reviewed above, both Ungaro and Mays unequivocally identified appellant as one of the men who fled after the uniformed officers said "stop" and "police" with emergency lights activated. This evidence is more than a scintilla to prove appellant's identity. Appellant's voluntary return to the apartment complex after fleeing does not undermine the trial court's finding.

4

**D. Sufficient Evidence of Evading Arrest**

Appellant contends there is no evidence that any peace officer was lawfully attempting to arrest appellant, rather than merely detain him. *See Rodriguez v. State*, 578 S.W.2d 419, 419 (Tex. Crim. App. [Panel Op.] 1979) (elements include that a peace officer is attempting to arrest the defendant and the attempted arrest is lawful); *see also* Tex. Penal Code Ann. § 38.04. Appellant argues that there is no evidence a peace officer had probable cause to believe that appellant committed any violation of law. He contends there was a material variance between the State's pleaded violation of law—evading arrest—and the actual proof, which showed only that appellant evaded detention. *See Wright v. State*, 855 S.W.2d 110, 111–12 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (holding that evading arrest and evading detention are two separate offenses for purposes of legal sufficiency of the evidence).

The State contends, among other things, that the evidence is legally sufficient by a preponderance of the evidence that the officers were lawfully attempting to arrest appellant for possessing marihuana. We agree.[1]

**1. *Lawfulness of the Attempted Arrest***

For a warrantless arrest to be lawful, (1) the arrest must be authorized by the Texas Code of Criminal Procedure, and (2) peace officers must have probable cause to arrest. *See Rue v. State*, 958 S.W.2d 915, 918 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Under the Code, "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."

---

[1] The State also contends that the variance would not be material in light of a lesser pleading burden in a probation revocation proceeding compared to charging instruments, but we do not reach that issue. *See* Tex. R. App. P. 47.1.

Tex. Code Crim. Proc. Ann. art. 14.01(b). Possession of marihuana is an offense. *See* Tex. Health & Safety Code Ann. § 481.121(a).

The test for probable cause for a warrantless arrest is "whether at the moment of the arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (quotation omitted). Probable cause may "rest upon the collective knowledge of other police, rather than solely on that of the officer who actually makes the arrest." *Astran v. State*, 799 S.W.2d 761, 763 n.2 (Tex. Crim. App. 1990) (quotation omitted); *see also Smith v. State*, 58 S.W.3d 784, 792 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (discussing the "collective or imputed knowledge doctrine").

Ungaro unequivocally testified that appellant was one of five people standing in a group and smoking marihuana. Thus, there was more than a scintilla of evidence that the police had probable cause to arrest appellant for an offense committed in the presence of a peace officer. *See McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003) (officer had probable cause to arrest for possession of marihuana when he observed marihuana smoke in the air above the defendant, smelled the odor of marihuana emanating from the defendant, and saw a marihuana cigarette on the ground next to the defendant); *Isam v. State*, 582 S.W.2d 441, 444 (Tex. Crim. App. [Panel Op.] 1979) (officer had probable cause when he observed the defendant "smoking what appeared to be a marihuana cigarette" and smelled the odor of marihuana while approaching the vehicle); *Wisenbaker v. State*, 311 S.W.3d 57, 62 (Tex. App.—San Antonio 2010, no pet.) (officer had probable cause to arrest because the officer observed the defendant

holding a marihuana pipe, smelled the odor of burnt marihuana, and saw a cloud of smoke inside the residence).

## 2. *Attempted Arrest Versus Detention*

The record contains no express testimony that the officers solely intended to detain appellant to investigate a robbery, rather than arrest him for possessing marihuana. *Cf. Smith v. State*, 739 S.W.2d 848, 853 (Tex. Crim. App. 1987) (insufficient evidence because the officer testified that he was not attempting to arrest the defendant and the officer only chased the defendant to investigate whether the defendant was unlawfully possessing a gun). From the evidence of marihuana possession discussed above, the trial court could have inferred that the officers were lawfully attempting to arrest appellant for possessing marihuana at the time he fled, even if they were also attempting to detain him to investigate a robbery. *See McGruder v. State*, No. 03-08-00726-CR, 2009 WL 1811084, at *4–5 (Tex. App.—Austin June 26, 2009, no pet.) (mem. op., not designated for publication) (sufficient evidence even though the purpose of the traffic stop shifted from warning the defendant about loud music to arresting the defendant for possession of marihuana after the officer "observed what appeared to be a marihuana blunt"); *cf. Wright*, 855 S.W.2d 110, 111 (insufficient evidence because there was no evidence that the officer had probable cause to arrest the defendant when the officer shouted, "Stop, police officer," because the officer had observed the defendant merely sitting in a van).

The evidence is legally sufficient by a preponderance to support the trial court's finding that officers were lawfully attempting to arrest appellant. Thus, appellant's sole issue is overruled.

7

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/  Sharon McCally
   Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).